HARRIET M. MILES *vs.* SAMUEL P. JANVRIN, administrator
HERBERT S. MILES *vs.* SAME.

Suffolk.   December 8, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Landlord and Tenant.   Lord's Day.   Contract,* Validity.   *Frauds, Statute of.*

In an action by a married woman against the owner of a house let by him to the
plaintiff's husband, for personal injuries to the plaintiff caused by a defect in
the steps leading to the house, if there is evidence upon which the jury can find
that the defendant made a lawful contract with the plaintiff's husband to look
after the condition of the steps and keep them safe, so that the plaintiff's hus-
band and his family might use them confidently without the duty of examining
them to see whether the wood was sound and strong, the case is for the jury
and it is error to order a verdict for the defendant.

In an action by a married woman against the owner of a house let by him to the
plaintiff's husband for personal injuries to the plaintiff caused by a defect in
the steps leading to the house, it appeared that the principal conversation which
resulted in the letting of the premises to the plaintiff's husband occurred on the
Lord's day, that the defendant then promised the plaintiff and her husband that
he would have the steps looked over and put in good repair, and would keep
them so while they lived there, that the plaintiff's husband moved into the
house in the following week, that, on the next day after the plaintiff went into
the house to stay, the defendant came there and the plaintiff said to him that
she saw he had done nothing about the steps yet, whereupon the defendant re-
plied that he was going immediately to give directions to his son to "come
down and look right after them," and that soon after the accident the defendant
put in new steps.   The defendant testified that he told his son to " be particular
to keep them [the steps] safe so that no accident would occur."   *Held,* that, al-
though the first conversation alone could not have been proved under the stat-
ute of frauds, because it was a contract for a sale of an interest in land, and it
also was void as a contract, because it was in violation of the statute for the
observance of the Lord's day, yet, at the time of the later conversation, there
was no question of the statute of frauds, because the tenancy had been created,
and, as the conversation between the defendant and the plaintiff after she went
to the house to live referred to a former conversation and was not intelligible
without knowing what the former conversation was, the fact that the previous
conversation was on the Lord's day did not make it incompetent for the purpose
of explaining the later conversation and showing its meaning, and that the jury
might find that, in connection with entering into the relation of landlord and
tenant on a week day, the parties adopted the contract which they previously had
attempted to make, and that there was evidence for the jury that the defend-
ant had agreed to keep the steps in a safe condition.

TWO ACTIONS OF TORT, the first by a married woman for
ersonal injuries received by her at about seven o'clock in the

evening of October 17, 1903, from one of the steps leading to a house on Hillside Avenue in Revere, which her husband had hired from the defendant's intestate, giving way when the plaintiff stepped on it as she was going to take a car for Chelsea in company with her brother, and the second by the husband of the plaintiff in the first case for the loss of her services in consequence of her injuries. Writs dated December 19, 1904.

At the first trial of the first case in the Superior Court before *Bell,* J., the jury returned a verdict for the plaintiff, and the defendant alleged exceptions, which were sustained in a decision of this court, reported in 196 Mass. 431. Afterwards both cases were tried together before *Crosby,* J., who in each of the cases ordered a verdict for the defendant. The plaintiffs alleged exceptions, raising the questions which are considered in the opinion.

*J. A. McGeough,* for the plaintiffs.

*J. W. Ramsey,* (*W. M. Robinson & J. F. Lynch* with him,) for the defendant.

KNOWLTON, C. J. There was evidence in this case which would warrant the jury in finding that the plaintiff was in the exercise of due care and that the defendant's intestate was negligent, if the relation of the parties in regard to the steps was such that the defendant owed the plaintiff a duty to look after their condition and provide for their safety during the term of occupation of the plaintiff's husband as a tenant. The steps were a part of the premises let. As a general rule a tenant takes the premises as he finds them, with no duty on the part of the landlord to repair them, or provide for their safety during the term. But if a landlord retains in his possession and control approaches, halls or passages, to be used in common by different tenants, or by himself and tenants, the law implies from these relations a duty on his part to keep them in a safe condition, except as to obvious risks from the mode of construction or other permanent conditions, of which the tenant takes the risk because impliedly there is to be no change in these particulars. In the former decision of this case it was held that a landlord and tenant may enter into relations in regard to a part of the premises let, such that the landlord assumes the duty of looking after their condition, and providing for their safety, for the pro-

tection of the tenant. *Miles* v. *Janvrin*, 196 Mass. 431, 434, 435, 439. We believe this to be in accordance with the law as it is generally understood elsewhere. For a recent application of it in New York, see *May* v. *Ennis*, 78 App. Div. (N. Y.) 552. In such a case the question is not whether an important part of the landlord's undertaking is in form a promise to make repairs, but whether, as a result of the dealings of the parties with each other, they come into relations whereby the landlord undertakes and assumes the duty of looking after the condition of the premises in reference to safety, and of doing what is necessary for that purpose, so that the tenant properly may trust him for the performance of this duty. The control of the premises that the landlord retains in such cases is not a control that takes them out of the possession of the tenant as the owner of the estate at will or for years, but only a control so far as is necessary for making proper inspection and keeping them in a safe condition. The tenant could maintain trespass *quare clausum* against a stranger coming upon the premises, as well under such an arrangement as if the landlord made no repairs.

The difference between an agreement like that in *Tuttle* v. *Gilbert Manuf. Co.* 145 Mass. 169, or that of a landlord who agrees only to make general repairs during the term, and an agreement of a landlord who promises to take care of the property and keep it in a safe condition and in good repair during the term, is that the former is a simple contract to do certain work, and nothing more. If the landlord fails to do the work, it leaves him liable only for such damages as are the direct result of his breach of contract. This ordinarily would be only the cost of making the repairs. The tenant in such a case is not relieved of the duty of looking out for himself as to the safety of the premises, and refraining from using them if the use would be perilous by reason of the failure of the landlord to do the work. The latter is a contract which has reference directly to the condition of the premises as to safety, as well as in other particulars. The tenant may rely upon the undertaking in that particular, and assume that the premises will be kept safe for his use. Payment of damages for a personal injury resulting from a breach of such a contract would be directly in the contemplation of the parties in making the contract.

Apart from the question how far the rights of the parties are affected by the fact that an important part of their conversation was on a Sunday, there was evidence from which the jury might find that the defendant undertook to look after the condition of the steps, and keep them safe, so that the plaintiff's husband and his family might use them confidently, without the duty of examining them to see that the wood was sound and strong.

We come now to that part of the defense which is founded on the Sunday law. The principal conversation in regard to the letting of the premises occurred on the Lord's day. It appeared in evidence that the defendant, who was in charge of the property for the intestate, said to the plaintiff and her husband: "You won't have anything to do with those steps, never mind about it. I will take care of them myself; I will have them looked over and put in good repair, and keep them so while you stay there." Other evidence upon the same subject was that he said: "You won't have to bother with them steps, I will keep them in my own care; I will look after them myself, I have a man for that purpose that lives on the same street, and I will have him to overhaul them steps and fix them, put them in good repair, and keep them so as long as you live there." It appeared that the plaintiff's husband moved into the house the following week.

The agreement between the parties, made at that time, was not binding, for two reasons. In the first place it was a contract for the sale of an interest in land, and was within the statute of frauds. Secondly, it was illegal because it was in violation of the statute for the observance of the Lord's day. As an illegal contract it could not be ratified, so as to be in effect from the beginning; but it could be adopted subsequently without formality. See *Stebbins* v. *Peck*, 8 Gray, 553, as explained in *Day* v. *McAllister*, 15 Gray, 433. The plaintiff's husband and the plaintiff first came into the relation of contracting parties when the husband entered upon the tenancy, under the authority which had been given him on the Sunday previously, and the defendant accepted him as a tenant. What were the relations of the parties in reference to the premises? There was evidence that, the next day after the plaintiff

went into the house to stay, the defendant came there, and she said to him, "I see they haven't done anything to the posts or steps yet," and that he replied, "I am going right up to my son's now, and tell him about them and have him come down and look right after them." She also testified that afterwards, when she saw the defendant's son George at one time, she said to him: "I see you haven't done anything to those steps yet"; and he said, "Well, I will, when I get around to them." It appeared that soon after the accident the defendant put in new steps. The defendant testified that he told his son to "be particular to keep them [the steps] safe so that no accident would occur." The conversation between the plaintiff and the defendant, after she went to the house to live, by its very terms referred to a former conversation. It is not fully intelligible without knowledge of what the former conversation was. The fact that their previous talk was on a Sunday does not make it incompetent for the purpose of explaining the later conversation and showing its meaning. *Dickinson* v. *Richmond*, 97 Mass. 45. We are of opinion that, from all this evidence, the jury might find that, in connection with entering into the relation of landlord and tenant on a week day, the parties adopted the contract which they previously had attempted to make in regard to the tenancy, but which was of no effect because it was made on the Lord's day. *Day* v. *McAllister*, 15 Gray, 433, 434. *Stebbins* v. *Peck*, 8 Gray, 553. Upon the contract arising from the creation of the tenancy there was no question as to the statute of frauds. This evidence tends to show an understanding on the part of both parties that the defendant was to keep the steps in a safe condition.

*Exceptions sustained.*