MARY FIORNTINO *vs.* FRANK S. MASON, trustee.

Suffolk. March 3, 1919. — September 10, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant.*

Discussion by RUGG, C. J., of liability of landlord in case of tenancy at will for personal injuries caused by want of repairs.

In an action by a tenant at will of a portion of a house of the defendant for personal injuries sustained in descending an outside flight of steps which were a part of the premises let to the plaintiff, there was evidence that the accident occurred by reason of a defective condition of the steps, but there was no evidence that the defendant knew or had notice of any defect. The plaintiff testified that at the time of the letting the defendant said that "he would care for the house and fix everything right along good and safe" and that he would repair any time "you want." The defendant testified that, if he "knew there was a step broken or in condition to be dangerous," he "would fix it." It was *held* that the evidence warranted no further finding than that the defendant undertook to make necessary repairs on notice from the tenant, or possibly, if a defect came under his own observation, and did not warrant a finding that the defendant assumed the obligation of retaining such control of the premises as would enable him continuously to make sufficient inspection to detect and correct incipient defects, and that judgment should be ordered for the defendant.

TORT, against the owner, as trustee, of the house numbered 466 on Main Street in the part of Boston called Charlestown, for personal injuries sustained by the plaintiff on June 6, 1913, when the plaintiff was descending an outside flight of steps, which with the platform to which they led were a part of the portion of the defendant's house that was occupied as tenants at will by the plaintiff and her husband with their children. Writ dated July 17, 1914.

In the Superior Court the case was tried before *J. F. Brown,* J. The evidence in regard to the cause of the accident and the condition of the steps was conflicting. The portion of the evidence relating to the defendant's obligation to repair the steps is described in the opinion. There was no evidence that the defendant knew or had notice of any defect in the steps.

At the close of the evidence the defendant made a motion asking the judge to order a verdict for the defendant. The judge denied the motion and the jury returned a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

The case was argued at the bar in March, 1919, before *Rugg,* C. J., *De Courcy, Crosby, Pierce,* & *Carroll,* JJ., and afterwards was submitted on briefs to all the Justices.

*C. S. Knowles,* for the defendant.

*W. J. Patron,* for the plaintiff.

RUGG, C. J. The plaintiff occupied as tenant at will the second floor of a house of the defendant. A part of the premises let to her was a platform with outside uncovered steps. There was evidence tending to show that the plaintiff while carefully descending the steps was injured by reason of their defective condition.

The kinds of relations between landlord and tenant which have arisen in our decisions out of oral contracts establishing a tenancy at will may be divided into three general classes:

First. The ordinary oral contract for tenancy at will without further agreement. The respective rights and obligations of the landlord and tenant under such a contract for a tenancy at will are well settled. There is no implied agreement, apart from fraud, that the demised premises are or will continue to be fit for occupancy or safe and in good repair. The tenant takes the premises as he finds them and there is no obligation on the landlord to make repairs. The landlord is not liable for injuries arising from a

defective condition unless he has undertaken to make repairs and has made them negligently. *Kearines* v. *Cullen*, 183 Mass. 298. *Mackey* v. *Lonergan*, 221 Mass. 296.

Second. The parties may agree that the landlord shall make necessary repairs during the tenancy and thus vary the rights and obligations implied by the law as part of the ordinary relation of tenancy at will. An agreement to repair as a part of the letting is an agreement to make repairs on notice. Failure to comply with such agreement gives rise merely to a right of action for breach of contract, where the damages commonly are only the cost of making the repairs. A negligent omission to repair is not ground for an action of tort. *Tuttle* v. *Gilbert Manuf. Co.* 145 Mass. 169. The landlord under such a contract is not liable for personal injuries resulting from a defective condition of the premises unless he makes repairs and makes them negligently. *Conahan* v. *Fisher*, 233 Mass. 234, where cases are collected.

Third. The parties may make a still different agreement to the effect that the landlord shall keep and maintain the premises in a condition of safety on his own responsibility and without reference to notice from the tenant of defective conditions, and by virtue of the agreement for letting shall have and constantly retain such possession of the premises as is necessary for that purpose. It is one thing for a landlord to agree with a tenant that he will make repairs on the demised premises on notice that repairs are needed. That is an agreement of the second class. It is quite another and different thing for a landlord to agree that he continuously undertakes to keep the demised premises in repair and to relieve the tenant from any attention or thought respecting notice of needed repairs, so that the tenant may be as care free respecting the condition of the demised premises as is the guest in a hotel respecting the room assigned for his occupancy. Under such an agreement the landlord assumes the duty of looking after the tenement as to safety and retains so far as necessary to that end the possession thereof and the right to enter upon it at all times. There is nothing impossible in fact or law about such an agreement. *Miles* v. *Janvrin*, 196 Mass. 431; *S. C.* 200 Mass. 514. It is, however, a most onerous undertaking. See *Ryall* v. *Kidwell & Son*, [1914] 3 K. B. 135, 142. It is not made out by a simple agreement that the landlord will keep the premises in repair. That

means no more than that he will keep them in repair on notice from the tenant. Such an agreement is of the second class. An agreement of the third class goes much further. It can be supported and proved only by evidence far more explicit than a mere general agreement to maintain in repair. It imposes an obligation on the landlord to enter upon the demised premises at all reasonable times for the purpose of inspection and ascertainment of any defective condition. The landlord thereby assumes direct and initial responsibility for the condition of the premises as to safety at all times. Under such an agreement liability devolves upon the landlord for any failure reasonably to discover and remedy a defect or want of repair whereby injury ensues to any person to whom he owes the duty to inspect, discover and repair defects.

In the case at bar the plaintiff as tenant at will of the defendant seeks to recover by virtue of a contract of the third class. Confessedly she has no right of action under the first or second classes of contracts. The only point to be decided is whether there is any substantial evidence of a contract of that kind.

The plaintiff's testimony respecting her contract with the defendant was this: "He says, — 'don't worry — move in and I will fix it up in good condition and good order and safe, and don't be worried.' . . .—Q. What did he say about fixing the railing on the piazza? A. He says, 'all right — everything is all right—good and safe.' . . .—Q. Did Mr. Mason say anything about what he would do while living there? A. He says my man come and look at the house and what you want done. . . .—Q. Now, did you say anything to Mr. Mason or he say anything to you as to what he was going to do about taking care of the property while you were living there? A. He says he would care for the house and fix everything right along good and safe. That is what he says. . . . And Mr. Mason, he says, All right, and I will keep the house in good condition and fix it up for you good and safe. —. . . Q. And then he said he would repair those stairs? A. Yes, 'I would repair the stairs, and fix the lower stairs way up.' . . . —Q. When you wanted repairs done, did you see Mr. Sweeney or Mason, when Sweeney came to collect the rent? A. When he collect the rent, he ask what I wanted done, and he send a man to fix it.—Q. Whenever you wanted anything done, you told Mr. Sweeney? A. Yes.—Q. And Mr. Sweeney would have it done?

A. Yes. . . .—Q. Now, do you remember whether he did any other things that you didn't ask him to do?  A. I asked him when I wanted to fix the stairs and he fixed stairs. . . .—Q. Did he fix anything there that you didn't ask him to fix?  A. I asked him if he fixed the stairs, and he fixed the banisters and the lower stairs. —Q. Did he fix everything you asked him to fix?  A. Yes — he fixed downstairs.—Q. Did he fix any other things that you did not ask him to fix?  A. He fixed nothing only what I asked him. —Q. Was there anything else that he said about it?  A. He said he would repair any time 'you want' — good repair and it be kept good — don't worry — and safe.  That is what he said — Mr. Mason did."  This does not warrant a finding of an agreement on the part of the defendant to look after the property and himself assume with reference to it the obligation of a landlord respecting common stairs and passageways.  The only fair import of it all is that the defendant agreed to keep the tenement in good repair when his attention was called to defects by the tenant, or possibly when he knew of defects of his own observation.  But it does not go far enough to impose the initial obligation on the defendant as landlord to search for and remedy defects regardless of notice or request from the tenant.  If the case stood on the plaintiff's testimony alone, she must fail.

The defendant's testimony was this: "Q. You intend in your dealings with your tenants generally and in this particular case to keep the premises in good order and condition all the time?  A. According to the tenant I have.—Q. And particularly with reference to the question of keeping it in such order and condition as to make it reasonably safe, you have no doubt about that at all, have you?  A. I always look after that sort of thing.—Q. And Mr. Sweeney was instructed by you to notify you about this and other places, so you didn't wait for the tenant?  If you knew there was a step broken or in condition to be dangerous, you would fix it?  A. I would fix it.—Q. Didn't you say to Mrs. Fiorntino at that time, — I will do the same thing I have always done, Mrs. Fiorntino, I will keep the place in the usual good condition, and all right and safe?  A. Well, anything as general as that I don't remember about, I am sure. . . .—Q. That is what you did intend to do, wasn't it?  A. I certainly intended to put the house in repair and look after it.—Q. And keep it in repair?  A. I never

made an agreement with her or anybody else on such line as that." This is not fairly susceptible of the inference that the landlord assumed the obligation to retain such control of the premises as would enable him continuously to make sufficient inspection to detect and correct incipient defects. It goes no further, so far as concerns obligations, than to repair on notice from the tenant, or possibly, if the defect came under his own observation. It does not include the right and duty of constant inspection of the premises and continuous prevention from their falling into any want of repair.

The exceptions in the opinion of a majority of the court must be sustained. There appears to have been a full and fair trial. In accordance with St. 1909, c. 236, judgment may be entered for the defendant.

*So ordered.*