LUCY RYERSON *vs.* FALL RIVER PHILANTHROPIC BURIAL SOCIETY.

Bristol. October 28, 1943. — December 27, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN JJ.

*Landlord and Tenant*, Repairs, Landlord's liability to tenant or his family or his invitee. *Practice, Civil*, Requests, rulings and instructions; Appellate Division: ordering finding.

Upon a statement by a judge of a District Court in a report to the Appellate Division, that a certain "subdivided request" upon "all the evidence," filed with a number of reasons enumerated therein pursuant to Rule 27 of the District Courts (1940), "had to do with the evidence and were denied or given in conformity with my findings thereon. Because of the denial of said requests this report is requested"; and that the defendant, "being aggrieved by the finding and the refusal of the court to rule as requested, I hereby report the same to the Appellate Division for determination," the request must be regarded as denied.

Evidence, at the trial of an action of tort against a landlord for personal injuries sustained by a member of the family of a tenant at will of a dwelling house by reason of a defective step in outside front stairs, that at the beginning of the tenancy the defendant respecting repairs had stated to the tenant, without particular reference to such stairs, "You don't have to tell us what has to be done. We are taking complete charge and will make all necessary repairs now and in the future. We are going to look over the whole place and will fix what has to be done"; that a "man would be sent up in a short time"; did not warrant either a finding that the parties agreed at the time of the letting that the defendant would retain control over the front stairs, or a finding that the defendant agreed to keep the front stairs in a safe condition at all times, or a finding that there was an agreement of the third class referred to in *Fiorntino* v. *Mason*, 233 Mass. 451.

Upon a report by a judge of a District Court of a denial of a request by the defendant that upon "all the law and all the evidence a finding for the defendant is warranted, because" of grounds specified in compliance with Rule 27 of the District Courts (1940), the Appellate Division under G. L. (Ter. Ed.) c. 231, §§ 110, 124, properly vacated a finding for the plaintiff and ordered a finding for the defendant where, as asserted in the grounds for the request, the evidence reported did not warrant certain findings essential to recovery by the plaintiff.

TORT. Writ in the Second District Court of Bristol dated November 4, 1939.

The case was heard by *Torphy*, J. In this court it was submitted on briefs.

*H. W. Radovsky*, for the plaintiff.

*T. J. Lomax, Jr.*, for the defendant.

FIELD, C.J. This is an action of tort brought in a District Court to recover compensation for personal injuries alleged to have been sustained by the plaintiff upon the premises of the defendant by reason of the negligence of the defendant. There was a finding for the plaintiff, but there were no special findings. Upon a report to the Appellate Division, the finding for the plaintiff was ordered vacated and a finding for the defendant was ordered. The plaintiff appealed.

The defendant made seven requests for rulings which are numbered 1 to 7, inclusive. The report, signed by the judge, states: "The 7th subdivided request for ruling had to do with the evidence and were denied or given in conformity with my findings thereon. Because of the denial of said requests this Report is requested," and that the defendant "being aggrieved by the finding and the refusal of the court to rule as requested, I hereby report the same to the Appellate Division for determination."

"A finding of fact is not a proper subject of a report." *James B. Rendle Co.* v. *Conley & Daggett, Inc.* 313 Mass. 712. *Perry* v. *Hanover*, 314 Mass. 167, 169. The only matter for our consideration is whether there was error in the disposition of the requests for rulings. And since no contention is made by the defendant that there was error in the disposition of the requests numbered 1 to 6, inclusive, we consider only the disposition of request numbered 7.

Request numbered 7 was for a ruling that upon "all the law and all the evidence a finding for the defendant is warranted, because" of six stated reasons lettered from (a) to (f), inclusive. These reasons constituted specified grounds upon which the request was based in conformity with the part of Rule 27 of the District Courts (1940) that provides: "No review as of right shall lie to the refusal of a request for a ruling 'upon all the evidence' in a case admitting of specifi-

cation of the grounds upon which such request is based unless such grounds are specified in the request, and then only upon the grounds so specified." The "specification of the grounds upon which the requested ruling . . . was based did not call for a separate ruling of law upon each of the specified grounds. This requested ruling upon all the evidence was a single ruling with the reasons therefor specified," but all that was required of the judge was to deal with the request "as a unit." *Memishian* v. *Phipps*, 311 Mass. 521, 523.

The manner in which the judge dealt with request numbered 7 does not clearly appear in the report. In the absence of special findings his statement that the request was "denied or given in conformity with my findings thereon" does not show whether the request was "denied or given." It is possible, however, that the statement in the report "Because of the denial of said requests this report is requested," and the statement therein with reference to the defendant's "being aggrieved by the finding and the refusal of the court to rule as requested," import that request numbered 7 was denied. If, however, the statements do not so import, the disposition of the request does not appear, and it must be deemed to have been denied. *American Congregational Association* v. *Abbot*, 252 Mass. 535, 537–538. *Bankoff* v. *Coleman Bros. Inc.* 302 Mass. 122, 123.

The printed record, which contains not only the report of the judge but also an agreement of the parties, approved by the judge, for an amendment of the report, and which is accompanied by a copy of the docket entries, presents various procedural questions. These questions, however, need not be discussed. On the face of the report the defendant's request for ruling numbered 7 must be regarded as denied. The question thus presented for decision is whether on any one or more of the specified grounds for this request the defendant was entitled to a ruling that a "finding for the defendant is warranted." If the defendant was entitled to this ruling on any of the specified grounds, it is immaterial whether other specified grounds were insufficient to entitle the defendant to this ruling. Except in unusual cases a

defendant is entitled to a ruling that a "finding for the defendant is warranted" on the ground that evidence essential to proof of the plaintiff's case may be disbelieved. *Hoffman* v. *Chelsea, ante,* 54, 55. This ground, however, was not specified by the defendant, and under Rule 27, herein referred to, the defendant is not entitled to review on this ground of the denial of request numbered 7. The defendant now relies only upon the specified grounds lettered (a) and (c), which are hereinafter set forth.

According to the report the "plaintiff is the daughter of Mary Ryerson, a tenant, and at the time of the accident lived in the premises with the tenant." At the trial there was the following evidence: "The premises consisted of a lot of land with a single family cottage and a detached automobile garage or storehouse." The defendant "held a mortgage on the premises in question, and on July 21, 1939, became the owner thereof by a foreclosure sale. At the time of the foreclosure sale the plaintiff and her mother had lived in the house for several years as tenants of the previous owner." "On the morning of September 1, 1939, while the plaintiff was going down the outside front stairs, her heel went through the second step and she fell, suffering injuries." The mother of the plaintiff testified "that she occupied the entire premises." The plaintiff testified "that a couple of weeks before the accident the step where the injury occurred was a little weak, but at the time of the foreclosure appeared to be in good condition."

The specified grounds lettered (a) and (c) upon which, together with other grounds, request numbered 7 was based were as follows: "(a) The evidence does not warrant a finding that the parties agreed at the time of the letting that the defendant should retain control over the front stairway where the alleged injury occurred. . . . (c) The evidence does not warrant a finding that the defendant agreed to keep the front stairway in a safe condition at all times."

The evidence did not warrant either of these findings. In considering the evidence the distinction must be kept in mind between (a) an agreement "that the landlord shall

make necessary repairs during the tenancy" under which
an omission to repair is not a ground for an action of tort
— an agreement of the second class referred to in *Fiorntino*
v. *Mason*, 233 Mass. 451, 453 — and (b) an agreement "to
the effect that the landlord shall keep and maintain the
premises in a condition of safety on his own responsibility
and without reference to notice from the tenant . . . and
by virtue of the agreement for letting shall have and con-
stantly retain such possession of the premises as is necessary
for that purpose" — an agreement of the third class referred
to in *Fiorntino* v. *Mason*, 233 Mass. 451, 453. The plain-
tiff contends that in the present case there was an agree-
ment of this third class, under which an omission to repair
is a ground for an action of tort. The specified grounds
lettered (a) and (c) for request numbered 7, in substance,
present the question whether the evidence warranted a find-
ing that in the present case there was an agreement of this
third class.

With respect to an agreement of the third class mentioned
in *Fiorntino* v. *Mason*, 233 Mass. 451, the court there said
that such an agreement is "a most onerous undertaking,"
that it "is not made out by a simple agreement that the
landlord will keep the premises in repair" and that it "can
be supported and proved only by evidence far more explicit
than a mere general agreement to maintain in repair"
(pages 453–454).

There was no evidence of any written agreement between
the tenant and the defendant with respect to the letting of
the premises, the making of repairs thereon or the main-
taining of the premises in a safe condition for the use of the
tenant. There was, however, evidence of a conversation
between the tenant, the mother of the plaintiff, and an agent
of the defendant on the day of the foreclosure, the day of
the letting from the defendant to the tenant. The tenant,
the plaintiff, the daughter of the tenant, and a third witness,
testified to such a conversation. The tenant testified that
on the day of the foreclosure an agent of the defendant
"informed her of the foreclosure and asked permission to in-
spect the interior of the property." She testified that "dur-

ing the conversation" she said: "It needed lots of repair," and that the agent of the defendant answered: "You don't have to tell us what has to be done. We are taking complete charge and will make all necessary repairs now and in the future. We are going to look over the whole place and will fix what has to be done. When the man comes, remind him of rat holes around the cistern." The tenant testified further that "Nothing was specifically said about repairs to the front stairs, either at the time of the letting or at any time prior to the accident." The plaintiff testified "that at the time of the conversation between the tenant and the defendant's agent she was nearby and heard the conversation, which she states was: 'The property would be repaired. Not to worry about it. They would take care of everything. They would make necessary repairs and take complete charge of the place.'" "Another witness, who claimed to have heard the conversation, testified that the defendant's agent, after being questioned about repairs, stated: 'There is nothing to worry about. We are going to take full charge. He would send a man up to see to the repairs. He said the man would be sent up in a short time. He said he would make repairs now and in the future.'" On the other hand, the "defendant's agent denied the substance of the conversations with the three witnesses and stated that the only conversation had was one wherein he ordered the tenant out of the premises, but the tenant pleaded for an opportunity to stay, which plea was eventually granted."

It was for the trial judge to find upon the evidence, as a matter of fact, whether any conversation took place and, if a conversation took place, what words were used and with what meaning the words were used so far as their meaning could properly be affected by evidence of extrinsic circumstances. The only question of law on this phase of the case for the decision of this court relates to the findings warranted by the evidence. And on this phase of the case the evidence must be taken in its aspect most favorable to the plaintiff. But the interpretation and legal effect of the words and their meaning in this most favorable aspect of the evidence are matters of law to be decided by this court. *Rizzo* v. *Cunning-*

*ham,* 303 Mass. 16, 20–21, and cases cited. See also
*Arcade Malleable Iron Co.* v. *Jenks,* 229 Mass. 95, 100;
*Coleman Bros. Corp.* v. *Commonwealth,* 307 Mass. 205,
209–210.

There was no evidence that the defendant ever agreed in
express terms to keep the premises in a condition of safety
for the use of the tenant. See *Chelefou* v. *Springfield Insti-
tution for Savings,* 297 Mass. 236, 239. In this respect the
case differs from *Crowe* v. *Bixby,* 237 Mass. 249, 251, 252–253,
and *Eisenhauer* v. *Ceppi,* 238 Mass. 458, 459, 460. The only
place in the evidence in which the safe condition of the
premises is expressly mentioned is in the testimony of the
defendant's agent with respect to the repairs that he ordered
made after the accident, in which he said "that he ordered
various repairs to be made at various times after the acci-
dent, and that the policy of the defendant was to take com-
plete charge of the roof, piazzas and outside stairs of this
house for repairs and keeping in a safe condition as it did
in the case of roofs, stairways and piazzas of other tenement,
business and residential property which was owned by the
defendant on July 21, 1939; and that he as agent intended
to, and did, comply with this policy, and that the step in
question was fixed soon after the accident in accordance
with this policy." But there is no evidence that this policy
of the defendant was known to the tenant at the time when,
according to the evidence, the conversation took place be-
tween her and the defendant's agent.

It could have been found on the evidence that the defend-
ant's agent told the tenant that the defendant would "make
all necessary repairs now and in the future." But such an
agreement by the defendant, without more, would be merely
a simple agreement to repair, which is an agreement to repair
upon notice — an agreement of the second class referred to
in the *Fiorntino* case, under which an omission to repair is
not a ground for an action of tort. *Fiorntino* v. *Mason,* 233
Mass. 451, 453, 454. *Giorgio* v. *DiLiegro,* 285 Mass. 383,
385–387. *Andrews* v. *Leominster Savings Bank,* 296 Mass.
67, 68–70. *Trainor* v. *Keane,* 304 Mass. 466. An agreement
of the third class "is not made out by a simple agreement

that the landlord will keep the premises in repair." *Fiorntino* v. *Mason,* 233 Mass. 451, 453.

It could, however, be found upon the evidence that in the course of the conversation at the time of the letting the defendant's agent told the tenant, according to the testimony of the tenant, "You don't have to tell us what has to be done. . . . We are going to look over the whole place and will fix what has to be done. When the man comes, remind him of rat holes around the cistern," or that the agent told the tenant that, according to the testimony of another witness, he "would send a man up to see to the repairs" and that "the man would be sent up in a short time." The natural meaning of these words — and there is no evidence of extrinsic circumstances tending to show that they were used with a different meaning — is that the defendant would make an inspection of the premises for the purpose of ascertaining their condition at the time of the letting, and would make the repairs that such an inspection disclosed to be necessary without the tenant giving notice to the defendant of the specific repairs then required. The words do not naturally import an agreement on the part of the defendant to continue during the period of the tenancy to make inspections of the premises from time to time and to undertake the heavy responsibility of making repairs, without notice from the tenant, whenever in the future they should become necessary. The conclusion here reached is supported by the testimony of the tenant that she told the defendant's agent that the premises "needed lots of repair," but doubtless this testimony might have been disbelieved by the trial judge and, consequently, it cannot be used by us to limit the meaning of the words that could have been found by the trial judge to have been used by the defendant's agent. But even if the words relating to inspection of the premises by the defendant meant, as we think they did not, that the defendant agreed to make inspections "from time to time," such an agreement would not "impose any duty upon the" defendant "to maintain the . . . [premises] in a condition of safety at all times during the tenancy." *Trainor* v. *Keane,* 304 Mass. 466, 467. On neither of these interpretations of

the agreement relating to inspection would this agreement, considered merely with a simple agreement to "make all necessary repairs now and in the future," impose such a duty.

The statement of the defendant's agent to the tenant, "You don't have to tell us what has to be done," like the statement about inspection, naturally relates to the necessity of repairs at the time of the letting rather than to any such necessity that might arise in the future. The plaintiff's case, therefore, must rest upon an agreement testified to in various forms of words that the defendant was "taking complete charge," "would take care of everything," "would make necessary repairs and take complete charge of the place," was "going to take full charge" and there was "nothing to worry about." This language, like most of the other parts of the conversation testified to, naturally relates to the repairs that would be ascertained to be necessary upon the proposed inspection of the premises by the defendant. See *Collins* v. *Humphrey*, 314 Mass. 759, 762. If by reason of the reference in the conversation to "necessary repairs . . . in the future" this language relates to such repairs, it naturally means that the defendant agreed to take full charge of such repairs, that is, to make all such repairs, or to keep the premises in repair; in other words, made a general agreement to repair, which is an agreement to repair upon notice from the tenant, "or possibly, if the defect came under . . . [the defendant's] own observation." *Fiorntino* v. *Mason*, 233 Mass. 451, 456.

The language of the conversation, according to the aspect of the evidence most favorable to the plaintiff, is not "fairly susceptible of the inference that the landlord assumed the obligation to retain such control of the premises" ["a lot of land with a single family cottage and a detached automobile garage or storehouse," occupied, so far as appears, solely by the tenant and her daughter, the plaintiff] "as would enable . . . [the defendant] continuously to make sufficient inspection to detect and correct incipient defects" (*Fiorntino* v. *Mason*, 233 Mass. 451, 456), a control like that of a landlord over common stairs and passageways carrying with it a like obligation to maintain the premises in a condition

of safety. *Fiorntino* v. *Mason*, 233 Mass. 451, 455. See also *Miles* v. *Janvrin*, 196 Mass. 431, 433–434. The language of the conversation was not sufficiently explicit to impose such an onerous duty upon the defendant. The "power of control by a lessor necessary to create a liability in tort for breach of duty implies something more than simple obligation to repair property otherwise in the exclusive possession of the tenant." *Cormier* v. *Weiner*, 277 Mass. 518, 520.

The parties appear to have contemplated a contract for the doing of work in making repairs (see *Miles* v. *Janvrin*, 200 Mass. 514, 516), breach of which would be ground for an action of contract by the tenant, rather than a contract to keep the premises in a safe condition for the use of the tenant, breach of which would be ground for an action of tort by the tenant or by a person using the premises in the right of the tenant. The agreement between the tenant and the defendant was not "a contract which has reference directly to the condition of the premises as to safety, as well as in other particulars." *Miles* v. *Janvrin*, 200 Mass. 514, 516. The language that could have been found by the trial judge to have been used in the present case falls short in this respect of the language considered in *Miles* v. *Janvrin*, 200 Mass. 514, 516, and the language considered in *Crowe* v. *Bixby*, 237 Mass. 249, 252.

As was said in *Crowe* v. *Bixby*, 237 Mass. 249, 253, "Where the language of a contract is open to doubt and the parties to it have adopted and acted upon a particular construction, such construction will be considered as of great weight by the court and will usually be adopted by it." If, however, we assume that the words of the agreement that could have been found upon the evidence in the present case were ambiguous, the evidence of repairs made by the defendant had no tendency to show that the agreement was an agreement that the defendant would maintain the·premises in a safe condition for the use of the tenant rather than a general agreement to repair. See *Galvin* v. *Beals*, 187 Mass. 250, 253; *Shepard* v. *Worcester County Institution for Savings*, 304 Mass. 220, 223.

It follows from what has been said that the evidence did

not warrant the findings of fact referred to in the specified grounds lettered (a) and (c) for the request for a ruling numbered 7, and consequently did not warrant a finding that in the present case there was an agreement of the third class referred to in *Fiorntino* v. *Mason,* 233 Mass. 451, 453. Since such findings were essential to the maintenance of the plaintiff's case, the insufficiency of the evidence to warrant such findings required the granting of requested ruling numbered 7. The denial of this request for a ruling, therefore, was error for these reasons, if not for others, and since the finding for the plaintiff was vitiated by this error, it was rightly vacated by the Appellate Division.

The question remains whether a finding for the defendant was rightly ordered by the Appellate Division. A ruling that the evidence warranted a finding for the defendant does not necessarily require such a finding. But in the present case the findings referred to in the specified grounds lettered (a) and (c) for requested ruling numbered 7 were essential to the maintenance of the plaintiff's case, and for reasons already stated these findings were not warranted. The case, therefore, came within the provisions of G. L. (Ter. Ed.) c. 231, §§ 110, 124, and a finding for the defendant was rightly ordered. Judgment upon the finding must now be entered. G. L. (Ter. Ed.) c. 231, § 124.

*Order of Appellate Division affirmed.*
*Judgment for the defendant.*