GARIFALIA JACOVIDES *vs.* DAVID B. CHALETZKY.

Suffolk. January 3, 1955. — February 8, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Landlord and Tenant*, Repairs, Contract of letting.

A statement made by the authorized agent of a landlord at the time of letting premises to a tenant at will, that "I keep the house in good repair and keep it safe all the time. Don't worry . . . I promise . . . in good repair," did not show an agreement between the parties whereby the landlord was to maintain the premises in a condition of safety on his own responsibility without reference to notice from the tenant of defective conditions and was to retain such possession of the premises as was necessary for that purpose.

TORT. Writ in the Superior Court dated May 21, 1952. The action was tried before *Smith*, J.

*Nathan Moger*, (*George A. Verde* with him,) for the defendant.

*Ellis F. Brown*, (*Constantine M. Bucuvalas* with him,) for the plaintiff.

WILKINS, J. On April 3, 1952, the plaintiff, a tenant at will of the defendant of a second story apartment in a house on Elmwood Street in the Roxbury district of Boston, was hurt by falling through the floor of a piazza, a part of the rented premises, which had for its only entrance a doorway from the plaintiff's apartment. In this action of tort for negligence the judge denied the defendant's motion for a directed verdict. The jury returned a verdict for the plain-

tiff, and the case is here on the judge's report of his action on the motion.

The plaintiff seeks to establish the defendant's liability on the ground that the tenancy falls within the third class of cases outlined in *Fiorntino* v. *Mason*, 233 Mass. 451, 453, under which the landlord agrees to "maintain the premises in a condition of safety on his own responsibility and without reference to notice from the tenant of defective conditions, and by virtue of the agreement for letting shall have and constantly retain such possession of the premises as is necessary for that purpose." At the arguments the defendant stated, without challenge by the plaintiff, that the only decision in our reports where a plaintiff has prevailed in this class of cases is *Crowe* v. *Bixby*, 237 Mass. 249. We have said that such an undertaking, when applied to all portions of a tenement, "involves a degree of retention of control by the landlord which would be a surprise to most tenants. It must be seldom indeed that such an agreement is actually made." *Collins* v. *Humphrey*, 314 Mass. 759, 761.

If there is evidence of an agreement for a tenancy of the third class it must be found in the testimony of the plaintiff as to her conversations with George Chaletzky, the defendant's son and his admitted agent authorized to make agreements relating to the property, to supervise repairs, and to collect rents. When the defendant became owner in May, 1950, the plaintiff had been a tenant for some years. About June 1, 1950, George came to the premises and informed her that the defendant had bought the house. At that time George said in substance, "I keep the house in good repair and keep it safe all the time. Don't worry . . . I promise . . . in good repair." The plaintiff then paid the rent, which was $16 a month. On cross-examination she testified that George said, "I keep it repaired; I keep it good, and I will keep it safe. . . . I promise you." At this time there was, according to the plaintiff's testimony, a hole in the piazza "two fingers" wide and eighteen inches long, which she pointed out to George. On a later occasion

when he came to collect the rent he went onto the piazza and said, "Is good, no danger."

We are unable to distinguish this case from *Collins* v. *Humphrey*, 314 Mass. 759, 761. There the landlord agreed that "he would take full responsibility and would make the place safe and sound," and "was going to take charge of everything." The tenant "was not to do any repairs whatsoever." The landlord "was to do the repairs and keep it in good condition" and "would take the responsibility and keep it in good condition." In that case, it was held that the plaintiff failed to show every essential element of an agreement for this class of tenancy, which "cannot be found from evidence of a promise to assume complete responsibility for placing the premises in a condition of repair and safety without evidence of an agreement to assume complete and continuing responsibility for keeping them in that condition thereafter" (page 761). It, accordingly, was decided that the contract fell in the second class of cases in *Fiorntino* v. *Mason*, "where the obligation is only to repair on notice, and where liability in tort exists only for actually making the repairs in a negligent manner" (page 762). See *Trainor* v. *Keane*, 304 Mass. 466; *Ryerson* v. *Fall River Philanthropic Burial Society*, 315 Mass. 244.

The plaintiff relies on *Crowe* v. *Bixby*, 237 Mass. 249, where the landlord "agreed to keep the place in repair and safe to live in" (page 251). It would seem that the true ground of this case, which is not cited in the *Collins* case, must be some additional factor, such as the extent of repairs made by the landlord without notice subsequent to an ambiguous agreement. If there be any inconsistency, we prefer to follow the course so much more recently indicated in *Collins* v. *Humphrey*.

Since we do not have a case in the third class, we need not decide whether the evidence disclosed that the plaintiff's injuries were shown to be caused by any breach of duty of the landlord to perform the obligation resting upon him in that type of tenancy (*Fiorntino* v. *Mason, supra,* 454; *Crowe* v. *Bixby, supra,* 254; *Sneckner* v. *Feingold,* 314 Mass. 613,

614) or whether their cause was left a matter of conjecture. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 596–597.

In accordance with the terms of the report, a verdict is to be entered for the defendant.[1]

*So ordered.*