DOMENIC DIMARZO *vs.* S. & P. REALTY CORPORATION.

Suffolk.    October 2, 1973. — January 21, 1974.

Present:    TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Witness,* Leading question. *Landlord and Tenant,* Repairs, Landlord's liability to tenant or one having his rights, *Negligence,* One owning or controlling real estate, Repair.

In an action of tort for personal injuries resulting from collapse of a negligently repaired floor in premises rented to the plaintiff's employer by the defendant, it was not prejudicial error and was within the judge's discretion to admit a leading question and the plaintiff's answer on direct examination as to a statement made by the landlord indicating

that he had agreed to keep the demised premises in good repair where the plaintiff's memory as to the statement had been exhausted. [512-513]

Review of authorities regarding the tort liability of a landlord to his tenant for a defective condition of the demised premises. [513-514]

In an action for personal injuries sustained in collapse of a floor in premises rented by the defendant to the plaintiff's employer, it was proper to deny a motion for a directed verdict by the defendant where the evidence warranted findings that the defendant had expressly agreed to make repairs in the demised premises on notice, that the tenant's staying on in the building as a tenant at will after the expiration of an earlier lease, assumed by the defendant when it bought the building, constituted sufficient consideration for the agreement to repair, and that after the defendant had been notified of a deteriorated condition of the floor it undertook to repair the floor and did so negligently. [514-515]

TORT. Writ in the Superior Court dated June 2, 1970. The action was tried before *Goldberg, J.*

*Francis X. Kiley* for the defendant.

*Louis H. Casson* for the plaintiff.

HENNESSEY, J. This case reaches us on a bill of exceptions from the Superior Court in an action of tort. The plaintiff is an employee of a tenant of the defendant, and was injured when a section of the floor of the demised premises collapsed. Most of the relevant facts are not in dispute. The plaintiff's employer, L. Traster & Sons, Inc., held the premises under a lease signed with a prior owner. When the defendant purchased the building in 1954, it assumed the lease, which expired about 1960. Since then there has been a tenancy at will with monthly rent.

The floor involved was in good condition prior to December, 1967. On the morning of December 13, it was discovered to be flooded due to the rupture of a water pipe caused by lack of heat the night before. The landlord provided heat as part of the rental charge. The flooding was repeated, for the same reason, in February of 1968.

On May 10, 1968, Harold Powers, the president of the defendant, was told by the plaintiff, in the presence of George Traster, that the condition of the floor was considerably deteriorated. The jury were entitled to find that Traster was in control of the business of L. Traster & Sons, Inc., the plaintiff's employer. In response Powers requested

the plaintiff to get him a contractor who whould give an estimate on the repair job. The plaintiff sent a carpenter whose services were rejected. Instead, Powers sent some of his own employees to do the job. While more extensive work was done in the office area, "in the work area, only nails were put in the floor here and there." On August 26, 1968, the accident occurred.

The one disputed piece of evidence which provides the focus of this appeal is a further statement allegedly made by Powers on May 10. At trial, after the plaintiff testified that he had exhausted his memory as to the relevant conversation, he was asked the following question over the defendant's objection: "Did Mr. Powers in your presence make a statement to you—in your presence make a statement that the reason that he wanted you to get an estimate for the repairing of the floor is because at the time he let the premises to Mr. Traster that he agreed that he would keep the place in good repair?" The answer, made after an exception was noted, was "Yes."

The defendant makes two arguments on this appeal: (1) that the admission of the above question and answer was prejudicial error, and (2) that its motion for a directed verdict should have been allowed. There was no error.

1. The first argument can be quickly dismissed. This court has long held in both civil and criminal cases that in certain circumstances it is proper to put leading questions on direct examination, that the exhaustion of even a friendly witness's memory is one of those circumstances, and that, in any case, the decision rests within the sound discretion of the trial judge. *Moody* v. *Rowell,* 17 Pick. 490, 498 (1836). *Gray* v. *Kelley,* 190 Mass. 184, 187 (1906). *Commonwealth* v. *Dorr,* 216 Mass. 314, 318 (1914). *Commonwealth* v. *Simpson,* 300 Mass. 45, 51 (1938). *Commonwealth* v. *Hartford,* 346 Mass. 482, 487 (1963). Moreover, we have more than once previously stated that "[w]e are aware of no decision in this Commonwealth in which exceptions have been sustained because of the allowance of leading questions." *Guiffre* v. *Carapezza,* 298 Mass. 458, 460 (1937). *Westland Housing*

*Corp.* v. *Scott,* 312 Mass. 375, 383-384 (1942). *Commonwealth* v. *Sheppard,* 313 Mass. 590, 597 (1943). We do observe that the circumstances here, including the wording of the question as well as the crucial nature of the inquiry, clearly come close to the permissible limit of the judge's discretion in admitting the answer.

2. Under our earlier cases a series of rules was developed which restrict the liability of a landlord to a plaintiff standing in the place of a tenant at will for personal injuries sustained due to a defective condition of the demised premises. Whatever the contractual liability, there could be no tort liability for nonfeasance in the absence of an agreement, for consideration, that the landlord would keep the premises in a condition of safety, and make all repairs without notice. *Fiorntino* v. *Mason,* 233 Mass. 451 (1919). *Jacovides* v. *Chaletzky,* 332 Mass. 225 (1955). *Bushfan* v. *Gluck,* 339 Mass. 772 (1959). *Schopen* v. *Rando,* 343 Mass. 529 (1962). *Long* v. *Russell,* 344 Mass. 758 (1962). Gratuitous repair creates tort liability only if it is done in a grossly negligent fashion. *Bergeron* v. *Forest,* 233 Mass. 392 (1919). *Barrett* v. *Wood Realty Inc.* 334 Mass. 370 (1956). *Popowych* v. *Poorvu,* 361 Mass. 848 (1972). The ordinary agreement for consideration by which a landlord is to make repairs is construed as an agreement to repair on notice. *Conahan* v. *Fisher,* 233 Mass. 234 (1919). *Fiorntino* v. *Mason,* 233 Mass. 451 (1919). Failure to repair under such an agreement gives rise only to a contract action for the cost of the repair. Tort liability will exist, however, for negligently made repairs. In the absence of such a specific agreement to repair, no agreement will be implied from the mere letting of the premises, and any repairs made will be treated as gratuitous. *Bergeron* v. *Forest,* 233 Mass. 392 (1919).

These rules have been criticised as having a "logical quality, but . . . lead[ing] to some rather curious results." 37 Mass. L. Q. (No. 2) 21, 27 (1952). In a recent opinion we discussed some common law rules distinguishing the landlord-tenant relationship from other contractual arrangements and concluded that a change in those rules was

needed. *Boston Housing Authy.* v. *Hemingway,* 363 Mass.
184 (1973). Our discussion in the *Hemingway* case did not
apply to situations of tort liability.[1] The rationale for the
change in landlord-tenant contract rules was the question-
able validity in the modern context of "the common law's
conception of the lease as a conveyance of an interest in real
estate." *Boston Housing Authy.* v. *Hemingway,* 363 Mass.
184, 195 (1973).

We might well be inclined toward a reconsideration of the
rules of tort liability of lessors under a tenancy at will if the
decision in this case required it. No such reconsideration is
needed here, as the evidence of an agreement by the landlord
to repair justifies a verdict for the plaintiff on an ordinary
negligence theory, even under the traditional rules. No ques-
tion is raised here that the evidence warranted a conclusion
that negligence in accomplishing the repairs ultimately con-
tributed to cause the plaintiff's injuries.

Since the disputed evidence was properly admitted, there
was sufficient evidence to warrant a verdict for the plaintiff
in his action for negligence. Consequently, there was no
error in denying the defendant's motion for a directed ver-
dict. Such a motion can prevail only where, construing the
evidence most favorably to the plaintiff, it is still insufficient
to support a verdict in his favor. *Kelly* v. *Railway Exp.
Agency, Inc.* 315 Mass. 301 (1943). *DeLeo* v. *Jefferson,* 331
Mass. 317 (1954). Such was not the case here.

The disputed evidence was sufficient to warrant the jury in
finding that the landlord expressly agreed to make repairs,
when notified of a defect by his tenant, "at the time he let the
premises to Mr. Traster." As Traster & Sons was a tenant at
the time the defendant bought the building, the defendant
merely assumed the contractual obligation under the lease
signed by its predecessor, as it was presumably bound to do.
*Winnisimmet Trust, Inc.* v. *Libby,* 232 Mass. 491 (1919).
G. L. c. 183, § 4. The jury were entitled to find both that the
time when the defendant "let the premises" was when the

[1]See 363 Mass. at 200, fn. 13. Indeed, the *Hemingway* case dealt expressly with the habitability and not directly with the safety of the leased premises.

lease expired about 1960 and was replaced by a tenancy at will, and that the tenant's staying on in the building when it had no obligation to do so constituted sufficient consideration for an agreement to repair. Cf. *Bergeron* v. *Forest,* 233 Mass. 392, 400 (1919). The existence of such a contractual agreement was clearly an issue for the jury. Accordingly, the motion for a directed verdict was properly denied.

*Exceptions overruled.*