Butler, J.
The plaintiffs, Charles W. McKinney and Laurie McKinney (herein collectively referred to as the McKinneys), seek damages for injuries sustained by Charles McKinney and for the loss of consortium to Laurie McKinney, as a result of a fall due to a defective condition on certain commercial property located at 295 Burncoat Street, Worcester, Massachusetts. In their complaint, the McKinneys allege that Dairy Mart East, Inc., Dairy Mart Convenience Stores, Inc., and Dairy Mart, Inc. (herein collectively referred to as “Dairy Mart”), as lessees of the property, are liable for negligently maintaining the premises (Counts I, IV, VII, VIII, IX, and X). The McKinneys also name the owner of the property Margaret Slattery (“Slattery”) as a defendant, alleging that she negligently failed to maintain her property in a reasonably safe condition. (Counts II and V).[1] Defendant Slattery now moves for summary judgment on both counts, asserting that she neither had control over the property nor had notice of the defect. For the reasons set forth below, the defendants’ motion is allowed.
BACKGROUND
The following facts are undisputed. At all times relevant to the present controversy, Margaret Slattery owned certain commercial property located at 291-297 Burncoat Street, in Worcester, Massachusetts. The property consisted of one building with two separate but adjoining units.
On December 3, 1983, Slattery entered into a lease agreement with Dairy Mart for one of these units (the Dairy Mart Premises). The lease ran for five years and gave Dairy Mart the option to extend the lease for three five-year terms.
In November of 1984, Slattery leased the other unit (the Spa Premises) to James F. Coggins (“Coggins”) for a five-year term, commencing in December 1984, and giving Coggins the option of extending the lease for two additional five-year periods. The lease agreement permitted Coggins to assign or sublease the Spa Premises, “provided . . . tha[t] any assignment or sublease shall be subject to all of the terms and conditions of this Lease.” PI. Exh. 1 ¶12. In addressing the maintenance and repairs of the premises the lease provided that:
a. The Tenant shall maintain, at its expense, the interior and the exterior of the Leased Premises in good repair and in a clean and attractive condition.
b. The Owner shall, at her expense, keep and maintain the roof, foundations, floor slabs and all structural walls and storefront of the Leased Premises in good order and repair. In the event, after reasonable notice to the Owner, the Owner fails to make any repairs as hereinbefore provided, then, the Tenant shall have the right to make these repairs and deduct the cost hereof from any future rental payment.
Pl. Exh. 1 ¶13.
The leasehold interest in the Spa Premises was assigned several times until ultimately, on June 30, 1986, Dairy Mart obtained an assignment of the leasehold interest in the property.[2] On that same day, Dairy Mart agreed to purchase certain equipment including large appliances and furniture, as well as inventory, from its assignor (Slattery’s Spa, Inc.).
On July 27, 1988, while in the course of his employment for Coca-Cola Enterprises, Inc., Charles McKinney entered the Spa Premises and fell into a hole in the floor resulting in personal injuries. At the time of the accident, Slattery carried a liability insurance policy covering both the Spa Premises and the Dairy Mart Premises.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. *400 Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
In moving for summary judgment, Slattery asserts that no dispute exists as to the commercial nature of the Spa Premises. Slattery further argues that because she neither had control over the Spa Premises at the time of the injury nor had notice of any defective condition therein, she is entitled to summary judgment as a matter of law.
While the McKinneys do not dispute the commercial nature of the building, they argue that summary judgment is inappropriate because a material question of fact remains as to Slattery’s control over the premises. Likewise, the McKinneys assert that a factual dispute exists regarding whether Slattery had notice of the defective condition of the floor. Finally, the McKinneys contend that because Slattery covenanted to maintain the floor slabs in good order and repair in the lease agreement, she was under an affirmative duty to inspect the property to insure that the building was safe. A lessor of commercial property is liable for personal injuries only where “(1) he contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a common area, or other area appurtenant to the leased area, over which the lessor had some control.” Chausse v. Coz, 405 Mass. 264, 266 (1989). In order for Slattery to be liable in the instant case, the McKinneys must establish that Slattery had control over the place where the accident occurred. See King v. G&M Realty Corp., 373 Mass. 658, 660-62 (1977) (landlord owes duty of reasonable care to maintain areas under his control); Crowell v. McCaffrey, 377 Mass. 443, 448 (1979) (one in control of area has duty of reasonable care); Minkkinen v. Nyman, 325 Mass. 92, 94 (1949) (defendant not liable for defect unless he had control over area in which defect occurred).[3]
In support of summary judgment, Slattery offers Dairy Mart’s Response to a Request for Admissions of plaintiff Charles McKinney in which Dairy Mart admits that it was in control of the Spa Premises on the date of the injury. In response, the McKinneys offer both Slattery’s deposition and interrogatories in which Slattery admits having liability insurance coverage for the building. Relying on Perkins v. Rice, 187 Mass. 28 (1904), the McKinneys argue that the insurance policy creates a factual dispute on the issue of control. This is not the case.
It is axiomatic that a blanket insurance policy which covers more than one location is inadmissible to establish control. E.g. Camerlin v. Marshall, 411 Mass. 394, 398 (1991); Cowan v. Eastern Racing Ass’n, Inc., 330 Mass. 135, 147 (1953); Minkkinen v. Nyman, 325 Mass. 92, 95 (1949). Where, as here, “there is ample scope for the operation of the policy apart from liability for defects in [the floor] where the plaintiff was injured, the existence of such insurance would not constitute an admission on the part of the defendants that they retained control of [the floor].” Minkkinen v. Nyman, 325 Mass. 92, 95 (1949). Compare Camerlin v. Marshall, 411 Mass. 394, 398 (1991) (insurance policy covering more than one location inadmissible to establish control), and Cowan v. Eastern Racing Ass’n, Inc., 330 Mass. 135, 147 (1953) (blanket insurance policy does not establish control), with Lekarczyk v. Dupre, 265 Mass. 33 (1928) (insurance policy on truck sufficient to show ownership), and Perkins v. Rice, 187 Mass. 28, 30-31 (1904) (insurance policy covering elevator admissible to establish control of elevator). Since the mere existence of a liability insurance policy covering the two-unit building does not establish a genuine issue of fact as to Slattery’s control over the defective floor, summary judgment is appropriate.
Slattery also asserts that she is entitled to summary judgment because she was never notified of the defective condition. In support of this assertion, Slattery offers her own affidavit in which she states that she was neither notified of any defect in the floor nor asked to make repairs prior to the date on which Charles McKinney was injured on the Spa Premises. Slattery also offers the affidavit of Daniel G. Higgins who states that he was never aware of a hole in the floor nor ever notified Slattery of the same.[4]
In opposing Slattery’s motion, the McKinneys contend that Slattery had notice of the defective condition of the floor because she knew of the sale of large items from the previous tenants of the Spa Premises to Dairy Mart. In support of this assertion, they offer the sales agreement. Moreover, the McKinneys contend that Slattery knew or should have known that the removal of the purchased items would cause damage to the Spa Premises. The McKinneys’ contentions are without merit.
Lack of notice of a defective condition on rented premises absolves the landlord of liabiliiy for injuries *401 resulting therefrom unless the landlord relieves the tenant of the notice requirement. See Young v. Garwacki, 380 Mass. 162, 171 (1980) (holding landlord liable in negligence for injuries caused by defects in rented residential premises of which he has notice); Fiorntino v. Mason, 233 Mass. 451, 453 (1919) (landlord can agree to waive notice requirement). This court fails to see how notice of the sale of large items and inventoiy constitutes notice of a defect in the floor upon which those items rest. Additionally, the sales agreement at issue is devoid of any language indicating that the purchased items were to be removed from the Spa Premises. Summaiy judgment is warranted where, as here, the McKinneys have failed to proffer any evidence establishing the existence of a genuine issue of material fact that Slattery had notice of the defective condition.
Finally, the McKinneys oppose summaiy judgment on the ground that the lease agreement itself created an affirmative obligation on Slattery to inspect the property to insure that the building’s structure complied with the terms of the lease. Construction of the lease at issue presents a question of law. Freelander v. G&K Realty Corp., 357 Mass. 512, 516 (1970). Ordinarily, an agreement in which a landlord promises to make repairs “is an agreement to repair on notice.” Young v. Garwacki, 380 Mass. 162, 166 (1980). Accord DiMarzo v. S&P Realty Corp., 364 Mass. 510, 513 (1974); Flynn v. South Middlesex Cooperative Bank, 316 Mass. 659, 662 (1944); Fiorntino v. Mason, 233 Mass. 451, 453 (1919), overruled on other gd’s by The Great Atlantic and Pacific Tea Co., Inc. v. Yanofsky, 380 Mass. 326 (1980); Hemingway v. Boston Housing Auth., 363 Mass. 184 (1973). While a landlord can agree to maintain the premises in a safe condition without reference to notice from the tenant concerning a defective condition thereon, such an agreement requires the landlord to agree “to relieve the tenant from any attention or thought respecting notice of needed repairs.” Fiorntino v. Mason, 233 Mass. 451, 453 (1919). Moreover, this type of agreement permits the landlord to enter the premises “at all times.” Id.
In the case at bar, the lease creates no more than a duty for the landlord to repair on notice. In fact, the paragraph upon which the McKinneys base their contention that Slattery had a duty to inspect the premises and repair without notice from her tenant belies such an interpretation. After defining Slattery’s duties to maintain the premises “in good order and repair,” paragraph 13(b) of the lease explicitly allows Dairy Mart to deduct from its future rent the cost of any repairs it makes to the premises “(i]n the event, after reasonable notice to [Slattery], [Slattery] fails to make any repairs as hereinbefore provided.” Pl. Exh. 1 ¶13(b). Consequently, the lease created nothing more than an obligation for Slattery to repair upon notice. Since Slattery did not waive the notice requirement in the lease, she is not liable for Charles McKinney’s injuries as a matter of law.
ORDER
For the foregoing reasons, defendant Margaret Slattery’s motion for summary judgment on Counts II and V is ALLOWED.

 The McKinneys also named Ralph Slattery as a defendant even though he died well before the accident at issue occurred. (Counts III and VI.)

 Soon after signing the lease, Coggins assigned his interest thereunder to Mary Ann Iandoli and Daniel G. Higgins. On May 1, 1985, Iandoli and Higgins assigned their interest to Slattery’s Spa, Inc. On June 30, 1986, Slattery’s Spa, Inc. assigned its leasehold interest in the Spa Premises to Dairy Mart with Slattery’s consent.

 Although the Supreme Judicial Court has held that control over an area is not necessary for liability in the residential context, see Young v. Garwacki, 380 Mass. 162, 171 (1980) (landlord liable for injury due to defective condition on rented premises where he has notice of the defect), it has refused to extend this rule to commercial properly. See Camerlin v. Marshall, 411 Mass. 394, 397 (1991) (refusing to extend Young v. Garwacki, supra, to commercial premises).

 Higgins operated his business on the Spa Premises immediately before its assignment to Dairy Mart.