Doris Mae Brown, administratrix, *vs.* A. W. Perry Company.

Suffolk. February 10, 1950. — March 8, 1950.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Counihan, JJ.

Landlord and *Tenant,* Elevator, Landlord's liability to tenant or his family or his invitee. *Elevator. Negligence,* Invited person, Violation of law, Elevator.

The duty of a landlord of a building with respect to an elevator in his control and used in common by his tenants and their business visitors is no greater as to any such visitor than his duty to the tenant visited, and is only to use reasonable care to maintain the elevator and its gates in as good condition as they were in or appeared to be in at the time of the letting to that tenant; a regulation made under St. 1945, c. 643, § 2, as to gates on elevators did not change this relation of the parties or add an independent ground of liability.

The mere fact that one in control of a building lets different parts of it to different tenants and retains control of an elevator used in common by them does not show a direct invitation by him to business visitors of the tenants to use the elevator.

The administrator of the estate of an expressman, who, when in a building collecting express packages from various tenants therein, sustained fatal injuries when he fell down the well of a common elevator because its gate was defective, could not maintain an action against one in control of the building and of the elevator where there was no evidence of the condition in which the gate was or appeared to be at the time the tenancy of any tenant began, or of any direct invitation from the defendant to the expressman to enter the building or to use the elevator.

TORT. Writ in the Superior Court dated August 21, 1946, and afterwards amended.

The action was tried before *Giles,* J.

*A. M. Pinkham,* for the plaintiff.

*R. N. Daley,* for the defendant.

LUMMUS, J. The defendant controlled a building on Bedford Street in Boston and the elevators therein. Stores and offices were occupied by various tenants. The elevators had no attendants to operate them. There was evidence that the gates on the elevators, and particularly those on the elevator on the Kingston Street side of the building, were defective, and would not close automatically, with the result that they did not guard against falling down the elevator well. The plaintiff's intestate was the driver of an express truck, and was in the building on November 28, 1945, collecting express packages from various tenants. There was no evidence as to the particular tenant or tenants that the deceased was visiting when injured, nor as to the condition of the elevator gates at the time when the tenancy of any of the tenants began. On that day, presumably because the elevator gates did not shut properly, he fell into the elevator well and received injuries from which he died on March 8, 1946.

In an action for his conscious suffering and death, the judge directed a verdict for the defendant, and the plaintiff's exceptions bring the case here.

The measure of duty owed by a landlord to his tenant and to a business visitor of the tenant with respect to common passageways, including elevators, is well settled. In *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203, 205, Rugg, C.J., said, "The plaintiff was a business visitor

of a tenant of the defendant. His rights are measured by the legal obligation which the defendant owed to that tenant. The duty of the landlord in respect to a common passageway controlled by him 'is that of due care to keep it in such condition as it was in, or purported to be in, at the time of the letting.'" See also *Sneckner v. Feingold,* 314 Mass. 613, 614; *McCarthy v. Isenberg Bros. Inc.* 321 Mass. 170, 172, and cases cited in the footnote. In the present case, the condition in which the elevator gates were or appeared to be at the time any tenancy began was not in evidence. *Murray v. Lincoln,* 277 Mass. 557, 559. *Sullivan v. F. W. Woolworth Co.* 305 Mass. 378.

There was no evidence of any direct invitation from the defendant to the deceased to enter the building or to use the elevator. It "has now become accepted as the law of this Commonwealth that an owner who lets different portions of his building to different tenants, retaining control of the common approaches, does not, by that fact alone without more, extend a direct invitation of his own to all persons having occasion to do business with his tenants, and that such persons enter under the invitation of the tenants, to whose rights they are limited." *McCarthy v. Isenberg Bros. Inc.* 321 Mass. 170, 172.

There was evidence of a regulation made by the department of public safety (St. 1945, c. 643, § 2), which requires gates which shall close automatically when the elevator car leaves the landing. It has been held that such a regulation does not change the relations of the parties or add any independent ground of liability. It remained incumbent on the plaintiff to prove that the condition of the elevator gates had deteriorated since the beginning of the tenancy of the particular tenant whom the deceased was visiting. *Garland v. Stetson,* 292 Mass. 95, 100, 101. *Richmond v. Warren Institution for Savings,* 307 Mass. 483. *Greenway Wood Heel Co. Inc. v. John Shea Co.* 313 Mass. 177, 183, 184. *Carroll v. Hemenway,* 315 Mass. 45, 46.

The plaintiff excepted to the exclusion of evidence that

the elevator gates, on the day after the accident, were ob-
served to work improperly and to stick after being raised,
leaving the elevator well open. Such evidence, if admitted,
would not remedy the defect in the plaintiff's case, that the
plaintiff failed to prove a deterioration in the condition of
the gates after some material tenancy had begun.

*Exceptions overruled.*