HARRY GLASSMAN, administrator, *vs.* LOUIS H. HAMEL & another.

Essex.    October 3, 1960. — November 15, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Proximate Cause.    Evidence,* Matter of conjecture.    *Landlord and Tenant,* Elevator, Landlord's liability to tenant or one having his rights.    *Negligence,* Elevator.

Evidence in an action against the owners of a factory building for the death of a workman in the building found dead at the bottom of the

shaft of a freight elevator left it conjectural whether there was causal connection between his death and any negligence of the defendants in failing to repair a defective upper floor elevator gate which stuck in a raised position when the elevator was at other floors.

TORT. Writ in the Superior Court dated March 10, 1957.
The action was tried before *Good, J.*
*Roger J. Donahue,* for the plaintiff, submitted a brief.
*Cedric L. Arnold,* for the defendants.

CUTTER, J. This is an action of tort to recover for the death and conscious suffering of the plaintiff's brother, and his intestate, Zelig Glassman. The case is here on the plaintiff's exception to the trial judge's direction of a verdict for the defendants. The evidence is summarized in its aspect most favorable to the plaintiff.

Zelig was employed as a freight elevator operator by a shoe company. The company was tenant, under an oral agreement made in 1952, of one half of the second floor and of all of the third to seventh floors, inclusive, of the defendants' Haverhill factory building. The defendants maintained and repaired the freight elevator, which ran from the basement to the seventh floor. As a part of his work Zelig moved racks of shoes, including taking them from the fifth to the fourth floor. Zelig went to work on March 28, 1955, at 7 A.M and was found dead at the bottom of the elevator pit at some time before 9:30 A.M. on that day. No one saw Zelig fall. He was last seen alive between 7:30 A.M. and 8 A.M. He had been on the fourth and fifth floors that morning and had been seen leaving the fourth floor, probably bound for the fifth floor, about 7:50 A.M. His watch was stopped at 8:40 A.M. Zelig's injuries were "consistent with a fall from five flights." It could have been found (a) that two to three months prior to March 28, the elevator gate at the fifth floor on occasion became caught in a raised position when the elevator ascended to higher floors; (b) that maintenance work was done upon this gate in November, 1954; (c) that this defect also appeared during an inspection on March 31, three days after the accident, although there was testimony that the defect was not

apparent when the elevator was tested in the presence of two police inspectors later on the morning of the accident, and during a test three days before the accident; (d) that, on March 31, there was a screw loose in a pulley, later repaired, on the fifth floor elevator gate which caused the gate to stick in an up position; (e) that Zelig had told his brother that he would be on the fifth floor between 8 and 9 in the morning on the day of the accident; and (f) that the fifth floor gate had been seen at about 8 A.M. to be in an up position by an observer from the ground floor platform when the elevator was "way up" at a floor above the fifth floor.

The fifth floor safety gate consisted of two horizontal bars, about twenty-six inches apart, possibly with vertical pickets between them, but the evidence as to this was conflicting. The elevator had two wooden sides and an opening on either end. No one "could fall between the elevator and either of the outside walls." The elevator was operated by a cable device and "a person . . . outside of the elevator could operate . . . [it] by reaching inside the shaft and pulling the cable up or down." On the morning of March 28, Glassman "appeared in very good humor" to the witness. Another witness quoted him "as saying he felt dizzy." About 8:45 A.M. to 9 A.M. one witness found the elevator on the seventh floor with the elevator door closed. There was an empty rack inside. This witness found all the elevator doors shut except that on the sixth floor, which he did not visit, but he was told that Glassman had not been on the sixth floor all morning. "With all the doors shut, and Glassman not being on the sixth floor at all, the witness could not explain how Glassman got into the elevator well."

We need not decide whether the defendants' liability was merely that of a landlord bound to use reasonable care to maintain the elevator in the same condition in which it was, or appeared to be, at the time of the letting (see *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170, 172; *Brown* v. *A. W. Perry Co.* 325 Mass. 479, 480–481) or whether the defendants were under liability by reason of an express agreement

to keep the elevator continuously in repair. Compare *Ryerson* v. *Fall River Philanthropic Burial Soc.* 315 Mass. 244, 250–251, and *Flynn* v. *South Middlesex Co-op. Bank,* 316 Mass. 659, 662, with *Banaghan* v. *Dewey,* 340 Mass. 73, 78. Even if it were to be assumed that there was a defect in the fifth floor gate of which the defendants had notice, which they negligently did not repair, and for which they were responsible, the evidence did not warrant a finding of causal connection between that defect and Zelig's injury. The cause and circumstances of that injury are left to surmise and conjecture. See *Burwick* v. *McClure,* 318 Mass. 626, 630. Cf. *Walsh* v. *Adams,* 245 Mass. 1, 5–6; *Story* v. *Lyon Realty Corp.* 308 Mass. 66, 71. The evidence does not warrant the conclusion that there is greater likelihood that it was occasioned by the negligence of the defendants than by a cause for which the defendants are not liable. The case in this aspect is governed by *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 594–597, and *Gilmore* v. *Kilbourn,* 317 Mass. 358, 362–363, rather than by the cases collected in *Weiss* v. *Republic Pipe & Supply Corp.* 335 Mass. 422, 427–428, and *Poulin* v. *H. A. Tobey Lumber Corp.* 337 Mass. 146, 148–149.

*Exceptions overruled.*