*Municipal Court of the City of Boston*

No. 245147

## JOSEPH AMARA & SONS, INC.

### v.

## PROVIDENCE STEAMBOAT CO.

Argued: Nov. 13, 1970   Decided: Nov. 24, 1970

*Present:* Adlow, C. J., Glynn, Foster, JJ.

Case tried to *Gorassi, Sp. J.* in the Municipal Court of the City of Boston No. 245147.

**Adlow, C. J.** Action of contract or tort to recover for damage to a barge allegedly sustained while in the possession of the defendant. In Count I the plaintiff, claiming in tort, relies on defendant's negligence. In Count II the plaintiff declares that the defendant was not only negligent, but failed to live up to its implied obligation to tow "properly and safely."

*There was evidence tending to show that* on October 1, 1968 the parties entered into an oral contract whereby the defendant, for the price of $1,650.00, agreed to tow the barge in question from Providence to Boston. On the day of the

arrangement the defendant's tug captain examined the exterior aspects of the barge — the decks, sides and manholes on the deck. On October 6, before the tow commenced, Angelo Amara of the plaintiff company visited the barge with the tug captain and observed 8″ of water in the middle compartment.

The barge was built in 1916. It was 216 feet long with a beam of 37.8 feet, and a draft of 10.5 feet. It was a steel barge; it had tracks on the top of its flat deck, having been intended for the transport of rail cars. The plaintiff intended to use it in its trash disposal business. Twelve transverse bulkheads divided the barge into 13 compartments: on each side of the deck were 13 manholes. All except 4 of the manholes had covers. These manholes gave access to the compartments below.

From October 1 to October 10, 1968 the barge was in the possession of the defendant. On October 7 the defendant started to tow the barge to Boston. The tow was performed by either lashing the barge to the side of the tug, or by towing it by a nylon line about 600 feet long. Two large truck tires and five heavy rope fenders were between the tow and the barge when they operated together.

On October 7 at 4:50 A.M. the tow started from Providence. The weather was good. About 15 miles from Providence it encountered rough seas. Because of the rough seas the captain of the tug turned about and returned to Provi-

dence. There was no leakage of the barge at this time.

On October 8, he started for the second time. While the tug captain did not check the marine weather forecast, he talked on ship to shore radio about the weather. No covers were improvised on the four open manholes. After two hours it was discovered that the barge leaked badly. The tug turned back and returned to Providence with the barge; during the return trip the tug did engage in pumping water from the barge. On this day the plaintiff was notified of the condition and on October 9, its representative assisted the defendant in pumping water out of some of the compartments. At this time the parties signed an agreement exculpating the defendant from liability even if defendant's negligence caused loss or damage to the barge while it was in the defendant's custody.

At 12:30 A.M. on October 10, 1968 the defendant departed from Providence with the tow with a view to entering Cape Cod Canal during daylight. Before departing the defendant's captain checked the weather — it was fine and calm. At 4:30 A.M. he reached the open ocean and put the barge on the long tow line. At Buzzards Bay the barge encountered fresh northeast winds — water came over the bow of the barge. At this time the barge was taking water and going down at the bow. The tug slowed down, went alongside the barge and began pumping water out of it, but had no success.

The report is rather obscure with respect to happenings in the anchorage area beyond the western exit of the Cape Cod Canal. The tugboat captain denied that the barge ever collided with another vessel or struck bottom during this voyage. Whether any such claim was made by the plaintiff's witnesses does not appear.

According to the log of the tug, at 2:00 P.M. on October 10, of the 26 hatches on the barge, 15 were filled with water. It was conceded that there were sandy beaches nearby where the barge could have been beached. The barge was refused entrance to Cape Cod Canal and was taken in a sinking condition to Sanchez Pier in New Bedford.

Angelo Amara, of the plaintiff company, testified that he inspected the barge on October 11, 1968. He found the guard rail on port side of barge badly damaged, the bottom of hull was holed intermittently from bow to stern and the interior concrete which covered the bottom was pushed up in places and broken. After some temporary repairs were made, another tow boat company towed the boat to Boston, where, despite repairs, the barge was a total loss.

At the close of the evidence the plaintiff filed twelve requests for rulings. In view of the express findings of fact made by the court which exonerated the defendant of the charge of negigence, it is unnecessary to consider these requests in detail. If the plaintiff is to prevail he has the burden of proving by a preponderance

of the evidence that the defendant did not use a degree of care commensurate with the responsibility involved in the performance of his agreement. The court decided otherwise and expressly found that the defendant was not negligent.

Nothing in this report discloses the true condition of this barge at the time it was turned over to the defendant on October 1. There is some evidence that on October 6 the owner saw 8 inches of water in the middle compartment. Just how seaworthy this barge was before the defendant made its first attempt to move it is largely a matter of conjecture. It is interesting to note that no survey was made of the barge either before or after the effort of the defendant to execute the tow. Except for the testimony of the owner as to the condition of the barge when it was brought into New Bedford, there is nothing to give any true or accurate estimate of the damage. The fact remains that the defendant did manage to get the barge into New Bedford, and that it did not sink.

The mere fact that the barge shipped a great quantity of water raises no presumption against the tug. *Kinkle Bros.*, 211 Fed. 540. *Atlantic City*, 241 Fed. 62. It is the contention of the plaintiff that the evidence of the owner describing the damage to the barge threw the burden of explaining the damage on the defendant. The captain of the defendant's tug denied that the barge ever collided with any vessel or

went aground during the tow. Apparently the court believed the defendant's version of the event, and disbelieved the evidence of damage described by the plaintiff. We must keep in mind that the owner of the tug is not an insurer, nor is he a common carrier, nor does the mere fact that the barge received injury render the tug liable. *The Clarence L. Blakeslee,* 243 Fed. 365, 366.

To recover it was incumbent on the plaintiff to show that the defendant was negligent. Whether the plaintiff relies on his count in tort or his count in contract, the standard of care demanded of the defendant was the same. There was no evidence concerning the barge or the manner of handling the tow except that provided by the plaintiff's representative and the captain of the defendant's tug. Their evidence provided a clear cut issue of fact, and the court, on this evidence, decided that the defendant was not negligent. The contract of immunity was ignored by the court and ruled immaterial. It had no bearing on the outcome. The finding that the defendant was not negligent was warranted by the evidence. *Stevens* v. *The White City,* 285 U.S. 195. *Glassman* v. *Hamel,* 341 Mass. 422. *C. E. Hart* v. *Blakemore,* 410 Fed 2d 221 (1966). The requests for rulings filed with the court by the plaintiff were all predicated on the negligence of the defendant. In view of the express finding of the court exonerating the defendant

of the charge of negligence, these requests were "inapplicable to facts found".

**There was no error. Report dismissed.**

WILLIAM T. CONLAN
of Boston for the Plaintiff.
ANDRE R. SIGOURNEY
of Nahant for the Defendant.