PATRICK J. O'BRIEN, SR., & others[1] *vs.* JON E. CHRISTENSEN,
trustee,[2] & others[3] (and a consolidated case[4]).

Suffolk. December 4, 1995. - March 14, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, GREANEY, & FRIED, JJ.

*Negligence,* One owning or controlling real estate, Construction work,
Porch railing, Repairs. *Practice, Civil,* Instructions to jury, Judgment
notwithstanding verdict. *Agency,* Liability of agent.

Express written obligations to repair and to be responsible for proper
repair, contained in a condominium declaration of trust, operated to es-
tablish the trustees' liability for the negligent repair of a porch railing in
the common area of the condominium property made by an indepen-
dent contractor hired by the trustees, and in a civil action seeking dam-
ages for injuries received when the railing gave way, the judge correctly
instructed the jury that the trustees should be held liable if the contrac-
tor was negligent. [285-289] O'CONNOR, J., dissenting.
In a negligence action the judge correctly entered judgment notwithstand-
ing the verdict in favor of one defendant, where there was no evidence
that would have supported a finding of liability for that defendant either
directly or vicariously. [289-291]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on June 22, 1990, and March 1, 1991, respectively.

The cases were tried before *Gordon L. Doerfer*, J., and
posttrial motions were heard by him.

The Supreme Judicial Court granted an application for
direct appellate review.

*John J. McGivney* (*Patricia B. Gary* with him) for Jon E.
Christensen.

---

[1]The other plaintiffs are the wife and two minor sons of plaintiff Patrick
J. O'Brien, Sr. They brought claims for loss of consortium due to injuries
suffered by Patrick J. O'Brien, Sr. For ease of reference, we shall refer to
Patrick J. O'Brien, Sr., and Walter J. Rhilinger as the plaintiffs where the
context so indicates.

[2]Of the City Point IV Condominium Trust.

[3]Paul D. Bausemer and Michael G. Bausemer.

[4]Walter J. Rhilinger *vs.* Jon E. Christensen, trustee, & another.

*Mark Lowery* (*Paul G. Keough* with him) for Patrick J. O'Brien, Sr., & others.

*David M. Hass* for Walter J. Rhilinger.

GREANEY, J. The plaintiffs, Patrick J. O'Brien, Sr., and Walter J. Rhilinger, were injured when a railing on a third-floor porch of a building gave way, and the two men fell more than twenty-five feet onto a neighbor's porch. Both men were tenants in condominium units in the building. O'Brien and Rhilinger brought separate personal injury actions in the Superior Court seeking damages from the defendants, Jon E. Christensen, as trustee of the City Point IV Condominium Trust (Christensen), Paul D. Bausemer, the carpenter who repaired the porch in 1986, and Michael G. Bausemer, Paul's brother, who had signed a contract with Christensen for the repair of the porch.[5] The two actions were consolidated, and tried and submitted to a jury, on the theory that Paul Bausemer had been negligent in repairing the porch and its railing and that Christensen and Michael Bausemer were liable for Paul Bausemer's negligence. The jury returned verdicts for the plaintiffs.[6] The defendants filed proper motions for judgment notwithstanding the verdict or for a new trial, see Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). The judge granted Michael Bausemer's motion, dismissing the claims against him, and denied the motions made by Christensen and Paul

---

[5]O'Brien also brought suit against Alan Shapiro, the owner of the condominium unit in which O'Brien resided. The judge allowed Shapiro's motion for a directed verdict, see Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974), and no issue regarding that ruling is raised in this appeal. Rhilinger failed to name Michael Bausemer as a defendant in his complaint, and the judge denied him leave to amend the complaint to add Michael Bausemer as a defendant. On appeal, Rhilinger maintains that denial of this motion was error. Because we shall conclude that the judge properly allowed Michael Bausemer's motion for judgment notwithstanding the verdict, this claim becomes moot and we do not address it. Christensen filed a third-party complaint seeking contribution from Paul Bausemer in the event Christensen was found liable for the plaintiffs' injuries. Christensen apparently abandoned this claim in the course of the litigation.

[6]The jury found Patrick J. O'Brien, Sr., ten per cent responsible for the accident, and awarded him $504,900 (as adjusted) in damages. His wife was awarded $120,000, and his two sons $25,000 each for their loss of consortium claims. The jury awarded Rhilinger $50,000 in damages.

Bausemer. Christensen[7] and the plaintiffs have appealed from the judgments that entered. We granted Christensen's application for direct appellate review. The principal issue on appeal is whether the judge erred in ruling that Christensen could be held liable for Paul Bausemer's negligence in repairing the porch from which the plaintiffs fell. We conclude that the judge was correct in his ruling on this point, and that the theory of liability should not have unfairly surprised Christensen when it was presented at trial. We discern no merit in the other issues argued on appeal. Accordingly, we affirm the judgments for the plaintiffs.

Viewing the evidence in the light most favorable to the plaintiffs, and drawing reasonable inferences in their favor, see *Sullivan* v. *Brookline*, 416 Mass. 825, 826 (1994), the jury could have found the following facts. The building at 801-813 East 4th Street in the South Boston section of Boston is a four-story structure with commercial condominium units on the first floor and nine residential condominium units on the second through fourth floors. At least some of the residential condominium units have access to a system of undivided wooden porches which span the rear of the building on the second, third, and fourth floors. These porches provide a required alternate egress from the building in case of fire.

Under a declaration of trust dated August 30, 1985, Christensen is the trustee of a real estate trust known as the City Point IV Condominium Trust which operates and manages the building at 801-813 East 4th Street. In the City Point IV Condominium master deed, the porches are designated "limited common elements." Under the declaration of trust, each unit owner possesses an easement appurtenant to the unit for the exclusive use of the porch, if any, to which there is direct access from the unit. Christensen, as trustee, is expressly obligated by the declaration of trust, "to be responsible for the proper maintenance and repair of the common elements."

In 1986, Christensen became aware that the building's porches needed to be repaired because their railings were defective. On June 6, 1986, Christensen entered into a contract with Michael Bausemer to remove and repair the building's rear porches. It was understood that Paul Bause-

---

[7] Paul Bausemer filed a notice of appeal from the judgment, but has not filed a brief with this court or otherwise participated in the appeal.

mer, who had the appropriate licenses,[8] would be responsible for the work called for by the agreement. During June and July of 1986, Paul and Michael Bausemer, working together, replaced the porches on the building. Paul Bausemer made all of the design decisions with respect to the construction project, and he hammered in all of the nails.

In 1987, Patrick J. O'Brien, Sr., and his wife rented a third-floor condominium unit in the building from the owner, Alan Shapiro. The unit had access to the rear porch on the third floor of the building. On September 5, 1989, Rhilinger was visiting O'Brien. The two men were on the porch behind O'Brien's condominium. Rhilinger leaned on the railing of the porch, and O'Brien came over to him, slapped him on the back and leaned on the rail beside him. The top rail of the balustrade gave way, and the two men fell onto a neighbor's deck two stories below the porch. Both men suffered fractures and other injuries. O'Brien, the more seriously injured of the two, sustained a permanent injury to his shoulder that has diminished his lifetime earning capacity.

An expert witness for the plaintiffs testified that the construction of the porch railing had not complied with the requirements of the State Building Code, or with standard design practice in the industry. According to the expert witness, a single nail was used at each upright post to secure the top railing to the upright post. Each single-nail connection could withstand the application of less than sixty-two pounds of pressure. The State Building Code, meanwhile, required connections capable of withstanding the application of 200 pounds of pressure. The witness described two alternative methods of nailing together a porch railing, either of which would have increased the load resistance enough to ensure compliance with the requirements of the State Building Code without greatly increasing the cost of construction. The chief building inspector for the city of Boston confirmed that a top porch railing secured by a single nail, as described by the plaintiffs' expert, would not have complied with the State's Building Code.

For their part, Christensen and the other defendants offered evidence tending to show that the porch railing had been properly repaired, and that the accident happened

---

[8]According to the testimony, Paul Bausemer held a "B,C" license in the city of Boston and a State construction supervisor's license.

because the plaintiffs rammed into the porch railing with considerable force while wrestling.

1. Although the plaintiffs argued several theories to support their claim of liability, the judge concluded, after a lengthy charge conference, that the jury would be instructed simply that Christensen and Michael Bausemer should be held liable if the jury found Paul Bausemer negligent. In reaching this conclusion, the judge considered Massachusetts case law and had brought to his attention by the plaintiffs the principles expressed in § 422 of the Restatement (Second) of Torts (1965), set forth in the margin, concerning the liability of a possessor of land who entrusts to an independent contractor the job of constructing or repairing a structure on the land.[9]

In keeping with his decision, the judge instructed the jury as follows:

> "[T]he only person's conduct on the defendant's side that you have to really focus on is Paul Bausemer. And the reason for that is that if you find that Paul Bausemer was negligent, then the other major actors on the defendant's side of this are also liable, because they are liable under the principle of what we call vicarious liability."

> "And the reason for that is that an owner of property is required to rehabilitate it, if you will, with due care

[9]As a general rule, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409 (1965). This general rule is subject to numerous exceptions, including the exception set forth in Restatement (Second) of Torts § 422, which provides, in relevant part, as follows:

"A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure . . . .

"(b) after he has resumed possession of the land upon its completion."

and with regard to the safety of others, and he cannot escape that liability simply by hiring someone else. So that if you find negligence on behalf of Paul Bausemer, then the trustees of the City Point Condominium Trust are vicariously liable for that negligence. We're not going to ask any questions about the trustees' liability."

In a subsequent memorandum of decision on the motions filed by the defendants for judgment notwithstanding the verdict, the judge further explained his reasons for instructing the jury in the manner just set forth. The judge observed that Christensen was the person in control of the common area porches, which were in obvious need of repair, and that Christensen, "under a duty to do so," expressly undertook these repairs to ensure the safety of the building's occupants and their guests. Christensen proceeded to hire a contractor who, the jury found, had performed the repairs in a negligent manner. The judge concluded that Christensen had been "in a position to select a contractor who could provide an indemnity, backed up by insurance, for the careful performance of this task, the negligent performance of which could lead to easily foreseeable disastrous consequences."

Christensen argues that under Massachusetts law, liability for the acts of an independent contractor arises only in certain limited circumstances, none of which exist in this case. Accordingly, Christensen argues, the jury instruction given by the judge fails to comport with Massachusetts law. He further argues that this court should not adopt (as he suggests the judge did) the principles stated in § 422 to impose liability on a possessor of land for negligence committed by an independent contractor hired to perform routine (as opposed to inherently dangerous) construction or repairs on the land. Contrary to Christensen's contentions, we conclude that the instruction was proper.

Christensen's liability is determined by his express written obligations contained in the declaration of trust "to make repairs, additions and improvements to or alterations of the common elements," and "to be responsible for the proper

maintenance and repair of the common elements."[10] Obligations created by contract can provide a basis for an action in tort. See *Parent* v. *Stone & Webster Engr. Corp.*, 408 Mass. 108, 113 (1990), and cases cited. We believe the obligations imposed on Christensen a nondelegable duty which would render him liable to the plaintiffs if the jury found that Paul Bausemer's negligence in repairing the porch had created an unsafe condition. In *Banaghan* v. *Dewey*, 340 Mass. 73 (1959), the trustees who maintained a commercial building expressly promised to keep the elevator in "safe condition." *Id.* at 77, 78. The jury found that an independent contractor hired by the trustees negligently repaired the elevator, and that the negligence caused personal injury to the plaintiffs. The court rejected an argument by the trustees "that they were not liable if they exercised care in selecting a reputable independent contractor to maintain the elevator." *Id.* at 79. The court stated: "The short answer to this contention is that the jury could find that the trustees themselves were under an admitted duty to keep the elevator in a safe condition, and are liable even for the negligence of an independent contractor carefully selected by them." *Id.*, and cases and authorities cited.

The agreement in the *Banaghan* case was characterized in *Glassman* v. *Hamel*, 341 Mass. 422, 424-425 (1960), as "an express agreement to keep the elevator continuously in repair." The agreement undertaken by Christensen was to monitor and properly to maintain and repair a third-floor porch which, if not safely repaired, would (and did) become highly dangerous. Whatever hair-splitting distinctions might have been assigned to various repair covenants by cases decided almost four decades ago, we do not think that the promise undertaken by Christensen should be construed to relieve him from liability because the harm was caused solely by his independent contractor. By enforcing Christensen's promise, we are giving effect to his express obligation, undertaken in his capacity as trustee, to make sure that the porch

---

[10]Christensen does not argue that, as the trustee of the trust which manages the condominium, his duty under these provisions differs from the duty which would apply to any other possessor or owner of land who had undertaken similar contractual commitments. In the absence of any question having been raised at the trial, we need not speculate upon what special issues, if any, might arise in the context of the management and control of condominium common areas.

was maintained and repaired *properly.* We conclude that the instruction given by the judge, while perhaps unnecessarily using the term "vicarious liability," correctly advised the jury, as matter of Massachusetts common law, that Christensen could be found liable if they determined that Paul Bausemer's negligence in repairing the porch had created the danger that caused the injuries.[11] See *Cleary* v. *Union Realty Co.,* 300 Mass. 312, 313-314 (1938). See also W.L. Prosser & W.P. Keeton, Torts § 71, at 511, 512 (5th ed. 1984) (landlord's duty to make repairs according to covenant may be nondelegable); 1 S.M. Speiser, C.F. Krause, & A.W. Gans, Torts 4:36 (1983). As a result, we need not consider whether the principles in § 422 should be adopted in whole or in part.

Contrary to Christensen's assertion, the principles just expressed have not been rendered obsolete by "the judicial repudiation of tort standards based on status." As Christensen observes, "[i]n recent years, this court has scrutinized various common law barriers to recovery in negligence cases that focused on the status of the plaintiff or the defendant, and has eliminated several such status distinctions that were anachronistic and unduly confusing and which did not promote tort law objectives of fairly allocating the costs and risks of human injuries." *Vertentes* v. *Barletta Co.,* 392 Mass. 165, 171 (1984) (Abrams, J., concurring). The cases cited by Christensen have eliminated status distinctions among groups of plaintiffs lawfully on the premises of a landowner. Not one of these cases holds, or implies, that an owner of land may delegate a voluntarily assumed, contractual responsibility like the obligations assumed by Christensen. Under the City Point IV Condominium declaration of trust, neither O'Brien, nor the owner of the condominium unit in which O'Brien was a tenant, could take any action to repair the porch adjacent to the unit. By agreement, that responsibility was reserved for Christensen who, as the judge observed, had the ability not only to hire a competent contractor but also to arrange for indemnification for injuries attributable to the contractor's

---

[11]The plaintiffs also contend that the defect in the porch was discoverable in the exercise of reasonable care. Based on the conclusion expressed, we need not reach this issue. We also do not consider the alternative theory of liability, advanced by Rhilinger, of breach of the warranty of habitability. Rhilinger has not claimed that he would be entitled to any additional remedies under that theory.

performance, and insist on insurance coverage to back up the promise of indemnification.[12]

We also reject Christensen's assertion that he was unfairly surprised by the judge's instruction on liability. Christensen's third-party complaint against Paul Bausemer, denying negligence and seeking "contribution" in the entire amount of any judgment entered against Christensen, implies an acknowledgment of the possibility of liability. Moreover, Christensen has not explained how he was harmed by the judge's instructions. On the basis of those instructions, Christensen only could be held liable if the jury found that the porch had been repaired negligently. The defendants presented a unified defense in this matter, vigorously contending that Paul Bausemer's workmanship had been fully adequate, and that the plaintiffs' conduct was the sole cause of the accident. Christensen participated fully in presenting the defense that, if successful, would have protected him from liability. In these circumstances, Christensen has not shown that he was prejudiced by the theory of liability advanced by the plaintiffs and accepted by the judge.

2. The only remaining issue requiring discussion is O'Brien's contention that the judge erred in entering judgment notwithstanding the verdict for Michael Bausemer. In his memorandum of decision regarding the parties' posttrial motions, the judge observed that uncontested evidence established that Michael Bausemer had no supervisory duties in the repair of the porch and that Paul Bausemer nailed together the porch which, the jury found, had been repaired

---

[12]Christensen also has cited three cases, *Doyle* v. *LaCroix*, 336 Mass. 484, 488 (1957); *Rasimas* v. *Swan*, 320 Mass. 60 (1946); and *Pickett* v. *Waldorf Sys., Inc.*, 241 Mass. 569, 570 (1922), which he maintains stand for the proposition that an owner of land is not liable for the negligence of an independent contractor unless the work being performed is inherently dangerous or creates a nuisance. In each of these cases, this court held that a landowner who has used reasonable care in selecting an independent contractor is not liable for any negligence of the contractor or his employee in the operative details of the performance of the work. Thus, for example, in the *Pickett* case, the landowner was not liable for the negligence of the contractor who allowed water used for washing windows to accumulate and freeze on a sidewalk. The court was simply applying the generally recognized rule that an employer is not responsible for "collateral negligence" in a contractor's performance. See Restatement (Second) of Torts § 426 (1964); W.L. Prosser & W.P. Keeton, Torts § 71, at 515 (5th ed. 1984). That rule clearly is not relevant to this case.

negligently. Christensen and Michael Bausemer understood
that the work specified in the agreement would be performed
by Paul Bausemer, who, unlike Michael Bausemer, held the
proper licenses as a builder. In view of Michael Bausemer's
limited role, as a middleman in arranging the agreement, and
as an unskilled assistant in the repair, the judge granted Mi-
chael Bausemer's motion for judgment notwithstanding the
verdict, on the ground that he had acted only as an agent for
his brother, and could not be held liable for the negligence of
his principal.

There was no evidence that would have supported a finding
that Michael Bausemer was responsible for, or knew or should
have known of, any defect in the porch railing. Thus, Michael
Bausemer's possible liability depends on whether he may be
held liable for his brother's actions. The answer to this ques-
tion turns on the legal character of the relationship between
Paul and Michael Bausemer.[13]

There is no support in the evidence for the assertion that
Michael acted as master in a master-servant relationship with
his brother, and could be held liable on this basis. See *Kans-
allis Fin. Ltd.* v. *Fern*, 421 Mass. 659 (1996). Despite the let-
terhead on which the agreement was prepared, Michael
Bausemer could not have been found to be an independent
contractor who hired his brother as a subcontractor. See *Lar-
kin* v. *Ralph O. Porter, Inc.*, 405 Mass. 179, 185 n.7 (1989)
(general contractor may be liable for acts or omissions of
subcontractor that cause injury to member of the general
public). The entire subject of the agreement was the repair to
be performed by Paul Bausemer, who, it was understood,
would have exclusive control of the project. As the judge
noted, Michael Bausemer might be found to have been an
agent for his brother, the principal whom Christensen had
agreed to employ. An agent who does not play a part in the
tortious conduct of his principal, and who lacks knowledge of
the principal's misconduct, is not liable for harm resulting to
third persons. See Restatement (Second) of Agency § 350
comment (*b*) (1958). In the absence of evidence that he had

---

[13]Where the facts are undisputed, and the reasonable inferences which
could be drawn therefrom are limited, this question may be resolved as one
of law. See *Royal Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 632 (1992).
Contrast *Morris* v. *Massachusetts Maritime Academy*, 409 Mass. 179, 194
(1991).

"an equal right to direct or control the coventurer," see *Commonwealth Elec. Co.* v. *Department of Pub. Utils.*, 397 Mass. 361, 367 (1986), cert. denied, 481 U.S. 1036 (1987), Michael also could not be held liable even if the brothers are considered to be joint venturers. Accordingly, the judge correctly concluded that there existed no established legal basis for the imposition of liability on Michael Bausemer. His motion for judgment notwithstanding the verdict properly was allowed.

*Judgments affirmed.*

O'CONNOR, J. (dissenting). The defendant Christensen filed a proper motion for judgment notwithstanding the verdict. The trial judge denied the motion. This court's affirmance of the judgment for the plaintiffs necessarily implies the court's determination that the evidence warranted the verdicts in the plaintiffs' favor. I believe that the evidence did not warrant the verdicts and that the trial judge's denial of Christensen's motion therefore was erroneous. I would reverse the judgment for the plaintiffs and order the entry of judgment for Christensen.

The evidence did not warrant a finding that Christensen was negligent. The court does not suggest otherwise. However, as a matter of tort law, the court holds Christensen responsible for the independent contractor's negligence, reasoning that "Christensen's liability is determined by his express written obligations contained in the declaration of trust 'to make repairs, additions and improvements to or alterations of the common elements,' and 'to be responsible for the proper maintenance and repair of the common elements.' " *Ante* at 286-287.[1] The court recognizes the general rule that, in the absence of his own personal negligence, the employer of an independent contractor is not liable for physical harm caused by the contractor's negligence. *Ante* at 285 n.9. However, after noting that there are recognized

[1]Elsewhere the court states, "The agreement undertaken by Christensen was to monitor and properly to maintain and repair a third-floor porch which, if not safely repaired, would (and did) become highly dangerous." *Ante* at 287. There was no evidence that Christensen agreed to "monitor" anything.

exceptions to that general rule, the court creates a far-reaching and inappropriate exception not previously recognized in this Commonwealth.

The new exception is that a possessor of land, such as Christensen or a landlord, who has agreed to do what the law would require of him in any event, namely "to be responsible for the proper maintenance and repair" of common areas, is liable for injuries due to the negligence of an independent contractor. The court appears to rely heavily on *Banaghan* v. *Dewey*, 340 Mass. 73 (1959), and then states, "Whatever hair-splitting distinctions might have been assigned to various repair covenants by cases decided almost four decades ago, we do not think that the promise undertaken by Christensen should be construed to relieve him from liability because the harm was caused solely by his independent contractor." *Ante* at 287.

. *Banaghan* v. *Dewey, supra,* which itself was decided "almost four decades ago," does not support the court's decision. The court states, *ante* at 287, that in *Banaghan* "[t]he jury found that an independent contractor hired by the trustees negligently repaired the elevator, and that the negligence caused personal injury to the plaintiff. The court rejected an argument by the trustees 'that they were not liable if they exercised care in selecting a reputable independent contractor to maintain the elevator.' *Id.* at 79. The court stated: 'The short answer to this contention is that the jury could find that the trustees themselves were under an admitted duty to keep the elevator in a safe condition, and are liable even for the negligence of an independent contractor carefully selected by them.' *Id.*, and cases and authorities cited." As the *Banaghan* court pointed out, by that agreement "the trustees . . . assumed a duty greater than that imposed under the common law rule. . . . Such an agreement, albeit unusual . . . may supplant the common law obligation." (Citations omitted.) *Id.* at 78.

The *Banaghan* agreement was characterized by the court in *Glassman* v. *Hamel*, 341 Mass. 422, 424-425 (1960), decided eleven months after the *Banaghan* decision, as "an express agreement to keep the elevator continuously in repair." Such an agreement is "a most onerous undertaking" and "is not made out by a simple agreement [to] keep the premises in repair." *Ryerson* v. *Fall River Philanthropic Burial Soc'y*, 315

Mass. 244, 248 (1943), quoting *Fiorntino* v. *Mason*, 233 Mass. 451, 453 (1919). An agreement to make necessary repairs is an agreement to repair on notice. It is not an agreement to maintain the premises in a safe condition at all times. *Ryerson, supra* at 250-251.

The distinction between the *Banaghan*-type agreement and the agreement in this case, which distinction has survived in this Commonwealth until today, is far from frivolous "hairsplitting." *Banaghan*, therefore, cannot properly be cited as authority for the proposition that a possessor of land, who agrees, on notice of need, to make repairs of the common areas or to be responsible for their maintenance, as is the situation in this case, may be held liable without his fault to one who sustains injuries due to the negligence of an independent contractor.

Here, prior to the plaintiffs' accident, Christensen had no notice either that the independent contractor had improperly set the nails or that the railing was unsafe. Christensen was not shown to have been negligent and he was not shown to have violated his agreement. It may be that a possessor of land may not delegate a voluntarily assumed contractual responsibility to keep his premises continuously in repair, as the court states, *ante* at 288, see *Banaghan* v. *Dewey*, *supra*, and *Glassman* v. *Hamel*, *supra*, but that is not relevant to this case, which does not involve such an agreement.

I would order that the judgment in favor of the plaintiffs against the defendant Christensen be vacated and that judgment for the defendant Christensen be entered.