Greco, J.
The evidence introduced during the trial of this case would have warranted a finding that the plaintiffs’ honeymoon at a Sandals Resort was ruined by a hurricane. What made this loss the subject of litigation as opposed to merely bad luck was Sandals’ “Blue Chip Hurricane Guarantee” by which Sandals promised a “free replacement vacation with round trip airfare” if a hurricane “interrupted] ” a customer’s stay. The plaintiffs had three possible entities to sue: Sandals, the Vacation Outlet at Filene’s Basement (“Vacation Outlet”) and Unique Vacations, Inc. (“Unique”). They chose not to sue Sandals, the most likely candidate. The plaintiffs instead commenced suit against both the Vacation Outlet and Unique, but their complaint against the Vacation Outlet was dismissed.
After a jury-waived trial, the plaintiffs recovered $3,922.00 on their breach of contract claim against Unique. The trial judge also found that Unique had violated the Consumer Protection Act, G.L.c. 93A, and awarded triple damages to the plaintiffs plus costs and $26,843.57 in attorney’s fees. Unique filed this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal on the grounds inter alia, that the evidence was insufficient as a matter of law to warrant the court’s findings against it on either the plaintiffs’ contract claim, or their G.L.c. 93A claim. Unique preserved this issue for appeal by filing a series of “negative warrant” requests, Mass. R. Civ. P., Rule 64A(b)(2), which sought rulings of law that the evidence did not warrant findings for the plaintiffs. Those requests were denied. See Champlin v. Jackson, 313 Mass. 487, 490-491 (1943).
Viewed in the light most favorable to the plaintiffs, the evidence indicated the following: Plaintiffs Heather and Kevin Collette (the “Collettes”) booked their honeymoon trip through the Vacation Outlet at Filene’s Basement Store. The accommodation component of that trip was a stay of seven nights to be split between two Sandals resorts in Jamaica at Negril Beach and Montego Bay. One of the main reasons the Collettes picked Sandals was the “Hurricane Guarantee” mentioned above, which was set forth in writing in a Sandals’ brochure and which they specifically discussed with the Vacation Outlet employee with whom they dealt. The Collettes paid for the accommodations by a check made out to the Vacation Outlet. The Vacation Outlet then, in turn, booked the hotel reservations with defendant Unique Vacations, Inc. In so doing, the Vaca *60 tion Outlet generated a written “Passenger Invoice and Confirmation,” which listed Sunburst Holidays as the airline “Vendor” and Unique as the hotel “Vendor.” The Vacation Outlet also forwarded payment to Unique in the amount of the money paid by the Collettes, less Vacation Outlet’s commission. The Col-lettes had no personal dealings with any employee of Unique in planning their honeymoon.
Because of Hurricane Mitch, the Collettes were unable to use many of the facilities at Negril Beach. Three of the four restaurants there were closed, and many resort activities were not available. Moreover, the Collettes were not able to go to the second resort at Montego Bay. During their stay at Sandals, the Collettes had no contact with any employee of Unique to complain about the accommodations or for any other purpose. In fact, the Collettes’ only interaction with Unique involved complaints which they made after the trip. After the Vacation Outlet contacted Unique to learn who would be the appropriate person at Sandals to address the Collettes’ concerns, the Collettes sent G.L.c. 93A demand letters to Sandals, the Vacation Outlet and Unique. Sandals and the Vacation Outlet responded, but Unique did not. Sandals’ response, however, offered a complimentary stay at its resort but instructed the Collettes to contact Unique to select a date in order to accept its offer.
The Sandals brochure stated that “Sandals Resorts and Beaches are represented worldwide by Unique Vacations.” Unique is a Florida corporation with its principal place of business in Miami. Its Miami address was listed on the Sandals brochure. If one were to call the toll free number given in the brochure (1-800-SANDALS), one would reach the offices of Unique and would be able to make reservations for any Sandals resort without going through a travel agent such as the Vacation Outlet. There was testimony at trial that Unique provided marketing and reservation services to Sandals and had the exclusive right to use the Sandals name and logo for purposes of taking reservations. No evidence was presented, however, as to who owned the two Sandals Resorts in Jamaica, who owned Unique, who held management positions in the corporations, or who held stock.[2]
In essence, the evidence at trial indicated only that Unique was held out to be the “worldwide” representative of Sandals and had the exclusive right to use the “Sandals” name in the booking of reservations. Unique’s only connection to the travel arrangements for the Collettes was its acceptance of payment from the Vacation Outlet. There was no evidence of what Unique did with this money. Such evidence would have warranted a finding that Unique was Sandals’ agent and, perhaps, that the Collettes knew Unique was Sandals’ representative, assuming they read every word in the brochure. However, Unique would not have become a party to any contract made with the Collettes because its principal, Sandals, was disclosed. Porshin v. Snider, 349 Mass. 653, 655 (1965). Moreover, there was no evidence that Unique played any role in formulating or offering the “Blue Chip Hurricane Guarantee,” that the Col-lettes dealt directly with Unique in making their decision to go to Sandals, or that they even discussed the “Hurricane Guarantee” with anyone from Unique. As stated in O’Brien v. Christensen, 422 Mass. 281 (1996), “[a]n agent who does not play a part in the tortious conduct of his principal, and who lacks knowledge of the principal’s misconduct, is not liable for harm resulting to third persons.” Id. at 290.
In these circumstances, the Collettes could have recovered on their breach of contract claim against Unique only if there had been some evidence which *61 either indicated that Sandals and Unique were engaged in a joint venture, or entitled the trial court to “disregard the separate entities” of these two corporations. Westcott Construction Corp. v. Cumberland Construction Co., 3 Mass. App. Ct. 294, 299 (1975). As to the former, “[i]t may not always be possible to identify criteria for the existence of a joint venture with any definiteness.” Shain Investment Co. v. Cohen, 15 Mass. App. Ct. 4, 8 (1982). However, ‘“[a] right of mutual control or management of the enterprise’ is an essential element of joint venture.” Id. at 9, quoting 2 Williston, Contracts, §318A at 563-564, 570, 579. As noted, there was no evidence in this case that Unique had any role in the “control or management” of the Sandals resorts, other than to accept bookings. The Collettes’ attempt to portray Unique as a Sandals principal is not advanced by their characterization of Unique as a “tour operator.” First, it is far from clear whether Unique was, in fact, a “tour operator,” which is defined in 940 CMR 15.02 as “a seller of travel services that creates and sells travel packages.” In any event, a “tour operator is not liable for the negligence of a third party supplier of services which the tour operator does not operate, manage or control.” Paredes v. Princess Cruises, Inc., 1 F. Supp. 2d 97, 91 (D. Mass. 1998). See also Wilson v. American Trans Air, Inc., 874 F.2d 386, 392 (7th Cir. 1989) (while a tour operator and a hotel operator “may have engaged in coordinated promotional activities for their mutual advantage, and [the tour operator] was paid for promotional services it performed, the record contain [ed] no evidence of any agreement to share profits and losses and no evidence that [the tour operator] had anything near an equal right to direct the operations of the hotel.”).
Thus, the sole remaining basis for the trial court’s finding against Unique would have had to have been some evidence that Unique and Sandals were essentially the same, or, as the Collettes argue, that Unique was the “alter ego” of Sandals so as to justify the disregarding of Unique’s status as a separate corporation. It would not be enough that both entities operated out of the same location, Browne v. Brockton Nat’l Bank, 305 Mass. 521, 530 (1940), or that Unique used Sandals’ name. See Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 746 (2000) (in case involving the liability of a truck manufacturer for the negligence of one of its authorized service dealers, the Supreme Judicial Court stated that “the mere use of a trademark and other logos of [the manufacturer] [was] not sufficient to raise a genuine issue of material fact that [the manufacturer] cloaked [the dealer] with apparent authority.”) The evidence that Sandals is in the business of operating a chain of resorts and that Unique is in the business of booking reservations for those resorts would also not be sufficient. Additional evidence would be required that Unique actively and directly participated in Sandals’ operations, “apparently exercising some form of pervasive control,” My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968), together with evidence that either entity “is a sham, or is used to perpetrate deception to defeat a public policy.” New England Theatres, Inc. v. Olympia Theatres, Inc., 287 Mass. 485, 493 (1934). Alternatively, there would have to be some evidence of “an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing.” Evans v. Multicon Construction Corp., 30 Mass. App. Ct. 728, 736 (1991). See also My Bread Baking Co., supra. Relevant to these considerations would be any evidence that the corporations had common ownership or common management, or that one of them did not act as a functioning business because, for example, it had inadequate capital, did not observe corporate formalities, did not maintain appropriate records, and did not have functioning officers and directors. See Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. *62 1985), cited in Evans v. Multicon Construction Corp., supra, at 733 for a more complete list of factors to be considered. See also Westcott Construction Corp. v. Cumberland Construction Co., supra at 297-299.
Applying these factors, the evidence in the record before us was insufficient to permit the trial judge to disregard the separate corporate identities of Sandals and Unique. There was no evidence of who owned Sandals and who owned Unique, who ran the two companies, whether Unique did anything other than to take reservations, whether employees of Unique wrote the Sandals brochure or had any say in how the Sandals resorts were run or, conversely, whether Sandals actively participated in the day to day operations of Unique. The Collettes could never have been deceived by Unique or about Unique’s role in their vacation plans. They went to the Vacation Outlet to book a Sandals vacation. It was at the Vacation Outlet that they learned of the “Hurricane Guarantee.” They never dealt with Unique, never discussed the Guarantee with anyone from Unique, and had no reason to be aware of the mechanics of the reservation process or to be concerned about it. Unique cannot be held liable because the Vacation Outlet chose to characterize it as the “Vendor” on a form, or because Unique had the sole right to use the Sandals name in its toll free number and on its website. As to the former, there was no evidence that Unique did anything to justify the “Vendor” characterization used by the Vacation Outlet. With respect to the latter, Unique’s use of the Sandals name has only limited relevance. Since the Collettes did not book their trip by using either the toll free number or the website, they could not have been confused or deceived by Unique’s use of the Sandals name. Moreover, we know of no reason why a business such as Sandals could not choose to farm out the logistics of booking reservations to an outside entity. If it did, it would make business sense to allow that entity to use the corporate trademark.
As the evidence was insufficient to permit a finding of a breach of contract or a G.L.c. 93A violation by Unique, the judgment against the defendant cannot stand. For that reason, it is unnecessary to address remaining issues concerning the adequacy of the demand letter, the amount of damages and the award of attorney’s fees.
The judgment for the plaintiffs is reversed and vacated. A judgment for the defendant, Unique Vacations, Inc., is to be entered.
So ordered.

 A witness for Unique did testify that Sandals had no ownership in Unique and did not manage or direct Unique’s business.